**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

**TRANSPARENCE, LLC**

**Plaintiff,**

**v.**

**SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.,**

**Defendants.**

**Civil Action No. 2:24-cv-00910**

**JURY TRIAL DEMANDED**

# COMPLAINT FOR PATENT INFRINGEMENT

1. Plaintiff Transparence, LLC ("Plaintiff" or "Transparence"), complains against Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc., as follows:

## THE PARTIES

2. Plaintiff Transparence, LLC, is an application software company incorporated in California with its principal place of business at 5900 Balcones Drive #20393, Austin, Texas 78731.

3. On information and belief, Defendant Samsung Electronics Co., Ltd. ("Samsung Electronics") is a company organized and existing under the laws of the Republic of Korea, with its principal place of business at 129 Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-Do, Korea 443-742.

4. On information and belief, Defendant Samsung Electronics America, Inc. ("Samsung USA") (collectively with Samsung Electronics, "Defendants" or "Samsung") is a corporation organized and existing under the laws of New York, with its principal place of business

at 85 Challenger Road, Ridgefield Park, New Jersey 07660. Samsung USA may be served through its registered agent for service of process, CT Corporation System, 1999 Bryant Street, Suite 900, Dallas, Texas 75201.

5. Plaintiff is informed and believes, and on that basis alleges, that Samsung Electronics America is a wholly owned subsidiary of Samsung Electronics and oversees domestic sales and distribution of Samsung's consumer electronics products, including the products accused of infringement in this case.

6. Plaintiff is informed and believes, and on that basis alleges, that Samsung Electronics America recently merged with Samsung Telecommunications America, Inc. ("STA"), based in Richardson, Texas, which operated Samsung's North American business with respect to mobile phones and telephony equipment.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

8. This Court has personal jurisdiction over Samsung Electronics and Samsung USA because, *inter alia*, they have done and continue to do business in Texas, and have committed and continue to commit acts of patent infringement in Texas, including making, using, offering to sell and/or selling accused products in Texas, and/or importing accused products into Texas, and/or inducing others to commit acts of patent infringement in Texas. For example, Plaintiff is informed, and on that basis alleges, that Samsung Electronics and Samsung USA maintain established places of business in Texas and the Eastern District of Texas specifically, including an office at 1000 Klein Road, Plano, Texas 75074, and at 1301 East Lookout Drive, Richardson, Texas 75082. Samsung Electronics and Samsung USA have not disputed this Court's personal jurisdiction over

them in other recent patent-infringement actions. *See, e.g.*, Answer at ¶ 10, *Barkan Wireless v. Samsung Elecs. Co., Ltd. et al.*, No. 2:18-cv-00028-JRG, Dkt. 25 (E.D. Tex., Apr. 23, 2018); Answer at ¶ 9, *Immersion Corp. v. Samsung Electronics America*, No. 16-cv-572 (E.D. Tex. Oct. Oct 24, 2017); Answer at ¶ 10, *Richardson v. Samsung Electronics Co.*, No. 6-17-cv-428 (E.D. Tex. Oct. 20, 2017).

9. Venue is proper against Samsung Electronics pursuant to 28 U.S.C. § 1391(c)(3) because venue is proper in any judicial district against a foreign corporation. *See In re HTC Corp.*, 889 F.3d 1349, 1354 (Fed. Cir. 2018).

10. Venue is proper against Samsung USA in this District pursuant to 28 U.S.C. § 1400(b) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District. *See In re Cray Inc.*, 871 F.3d 1355, 1362-63 (Fed. Cir. 2017).

11. In other recent patent actions, Samsung Electronics and Samsung USA either "admit[ted]," Answer at ¶ 14, *Richardson v. Samsung Electronics Co.*, No. 6-17-cv-428, Dkt. No. 1 (E.D. Tex. Oct. 20, 2017), or "d[id] not contest," Answer at ¶ 10, *Immersion Corp. v. Samsung Electronics America*, No. 16-cv-572 (E.D. Tex. Oct. 24, 2017), that this District is a proper venue for patent infringement actions against them. *See also, e.g.*, Samsung Defendants' Answer at ¶ 12, *Barkan Wireless*, No. 2:18-cv-00028-JRG, Dkt. 25 (E.D. Tex., Apr. 23, 2018).

## PATENTS-IN-SUIT

12. Transparence is the assignee of United States Patent No. 9,235,329 (the "'329 patent"), titled "System and Method for Cursor-Based Application Management," a true and correct copy of which is attached as **Exhibit A**. The '329 patent is designated a continuation of the application resulting in an earlier 8,850,357 patent, which is a continuation of the application

resulting in an earlier 8,418,079 patent; has a domestic filing date of April 16, 2015; and was duly and legally issued by the PTO on January 12, 2016. James Nicholas and Dale Fuller are the inventors of the ’329 patent.

13. Transparence is also the assignee of United States Patent No. 8,418,079 (the “’079 patent), titled “System and Method for Cursor-Based Application Management,” a true and correct copy of which is attached as **Exhibit B**. The ’079 patent has a filing date of September 1, 2009, and was duly and legally issued by the PTO on April 9, 2013. James Nicholas and Dale Fuller are the inventors of the ’079 patent.

14. Transparence is additionally the assignee of United States Patent No. 11,960,580 (the “’580 patent”), titled “System and Method for Cursor-Based Application Management,” a true and correct copy of which is attached as **Exhibit C**. The ’580 patent is designated a continuation of the applications resulting in U.S. Patent Nos.: 11,475,109; 10,521,570; 9,524,075; the ’329 patent; 9,077,705; 8,850,357; and the ’079 patent. The ’580 patent has a domestic filing date of August 5, 2022, and was duly and legally issued by the PTO on April 16, 2024. James Nicholas and Dale Fuller are the inventors of the ’580 patent.

15. The ’329, ’079, and ’580 patents are collectively referred to as the “Patents-in-Suit.”

16. The Patents-in-Suit provide specific, non-conventional improvements to then-existing computer graphical user interfaces (“GUIs”) by disclosing systems, methods, and devices for centrally managing authentication, notifications, and updates across multiple applications through a centralized GUI that persists regardless of the user’s computer environment (that is, regardless of the application that the user happens to be using). The claims of the Patents-in-Suit are directed toward specific systems, methods, and devices for associating authentication

requirements for multiple applications through a single manager login credential, using the single manager login credential to unlock persistent GUIs pertaining to application notifications and updates, and enabling the user to select applications from which to receive notifications and updates, regardless of the user's computer environment.

17. The claims of the Patents-in-Suit improve computer functionality by disclosing improved GUIs for computing devices. The GUIs disclosed by the Patents-in-Suit improve computer functionality in at least two respects.

18. *First*, the Patents-in-Suit provide for centralized (rather than application-specific) management and receipt of notifications and updates. At the time of invention, application notifications and updates were context-specific—that is, users could not easily receive notifications or launch updates without accessing the relevant applications themselves. *E.g.*, '329 Patent col. 1:64–2:4 ("[E]nd-users need a single, unified, persistent user interface to reduce the number of steps required to be productive and manage their computing environment. . . . The steps and actions required by users to manage the present environment are arduous, problematic, and without centralization and convenience."). This limitation grew more cumbersome as users began managing more applications during each computing session. *See id*. col. 1:66–2:1 ("Users often are required to manage multiple applications and event notifications during any computing session."). The Patents-in-Suit solve this problem by teaching specific systems, methods, and devices that enable users to manage multiple unrelated applications and event notifications through the use of a single, unified, and persistent interface that is nonintrusive and easy to use.

19. *Second*, the Patents-in-Suit facilitate the user's access to multiple password-protected applications via a single manager login credential. *E.g.*, '329 Patent col. 7:6–11 ("It is also envisioned that the user may wish to log into all of the applications identified in the application

menu simultaneously. In this situation, the user can simply select the 'Login All' item as shown in Fig. 5."). Without a single manager login credential, users often selected the same passwords across applications, jeopardizing their personal information. *See* Nat'l Cyber Security Centre, "Password managers: using browsers and apps to safely store your passwords," https://www.ncsc.gov.uk/collection/top-tips-for-staying-secure-online/password-managers (last accessed Oct. 4, 2024) ("We're often told that the passwords for our online accounts should be really strong, and to **not** use the same password anywhere else. Especially for those important accounts like email, banking, shopping and social media. The trouble is, most of us have *lots* of online accounts, so creating *different* passwords for all of them (and remembering them) is hard. This is where a password manager can help. A password manager (or a web browser) can store all your passwords **securely**, so you don't have to worry about remembering them. This allows you to use unique, strong passwords for all your important accounts (rather than using the same password for all of them, which you should *never* do."). The systems, methods, and devices for centralized authentication disclosed by the Patents-in-Suit bolster security by enabling users to easily select different and more complex passwords for various applications without having to remember each one, provided they recall their single manager login credential.

20. The Patents-in-Suit specifically identify problems with conventional application-management systems at the time of invention:

> The steps and actions required by users to manage the present environment are arduous, problematic, and without centralization and convenience. For example, to launch an email application, a user must either select the application from the Start Menu, desktop icon, and/or tool tray, or open a browser and navigate to a log-in page to authenticate a web-based service to begin a session. Additionally, end-users have to manage several applications concurrently, as well as multiple dialogue boxes and notification types native to each application, during that session. This creates frustration and reduces productivity.



12883860v1/017781

’329 Patent, col. 1:64–2:11. This conventional system wastes the user’s time by (1) requiring the user to access each application in order to log in, receive notifications, and launch updates; and (2) requiring the user to recall and enter different login credentials for multiple applications (or risk their information security by applying the same password across multiple applications).

21. The invention claimed in the Patents-in-Suit solves these known technological shortcomings in computers in particular, non-conventional ways: by disclosing an improved GUI that allows for centralized management of authentication, notifications, and updates across applications. *Id*. col. 2:15–22. Specifically, the Patents-in-Suit recite a specific improvement over prior-art systems, methods, and devices by solving problems present in computers. The Patents-in-Suit reduce the number of steps required to manage users’ computer environment by disclosing a persistent GUI as a centralized manager for applications, event notifications, authentication, and finding capabilities. “The end result is an environment where a multiplicity of applications can be ‘brought to the cursor’ regardless of context or environment (i.e., in a browser, in an application, on a desktop, etc.) for greater convenience and visibility.” *Id*. col. 3:13–17.

22. The devices, systems, and methods disclosed by the Patents-in-Suit were not well understood, routine, or conventional at the time of invention. At the time of invention, centralized means for satisfying various authentication requirements, and managing login statuses, for multiple applications were largely nonexistent. Today, they are a fixture of smartphones and tablets. *See Descope*, “Beyond Passwords: 3 Benefits of Biometric Authentication,” https://www.descope.com/blog/post/biometric-auth-benefits (last accessed October 4, 2024) (“A 2022 study reveals that a majority of Americans incorporate biometric auth in their daily lives. Accessibility is a key factor, with 68% using it to unlock personal devices and 51% to log in to apps.”).

23. The Patents-in-Suit also disclose a centralized means for managing and receiving push notifications from multiple applications, which were likewise virtually nonexistent at the time of invention. Again, today, users rely crucially on centralized push-notification systems, methods, and devices to manage their computing environment. *E.g.*, *Business of Apps*, "Push Notifications Statistics (2024)," https://www.businessofapps.com/marketplace/push-notifications/research/push-notifications-statistics/ (last accessed Oct. 4, 2024) (finding that a majority of smartphone users opt into push notifications on Android and iOS devices, and noting that the "benefits" of push notifications "were quite significant—now developers could communicate important information at any time, increasing the value of the apps to their end users").

24. The Patents-in-Suit additionally disclose a centralized means for managing and implementing application updates regardless of the user's environment, which were virtually nonexistent at the time of invention.

25. At the time of invention, Transparence foresaw that the growth of the number of applications used during computing sessions would require improved application-management devices, systems, and methods to allow for centralized administration of authentication, event notifications, and updates.

26. The Patents-in-Suit disclose embodiments of the invention, including specific persistent GUIs designed to facilitate centralized multi-application management. *See, e.g.*, Fig. 5 (demonstrating how the invention enables users to log in to various password-protected applications, including all such applications, through a centralized persistent GUI); Figs. 9 and 10 (demonstrating how the invention enables users to receive new-message notifications through a centralized persistent GUI, without the need to access the specific messaging application).

27. In sum, the Patents-in-Suit disclose improved GUIs for electronic devices by solving the computer-based problem of context-specific application management, which impedes the user's ability to manage multiple applications. The Patents-in-Suit solve this problem by disclosing specific methods, systems, and devices that allow users to navigate authentication, notifications, and updates across multiple applications through a single, persistent, and centralized application menu, The Patents-in-Suit thus deliver an improved user interface to solve a computer-related problem.




*Fig. 1.* Illustration of pre-Transparence context-specific application menu (left) versus Transparence's centralized, persistent GUI for multi-application management (right).

<u>**DEFENDANTS' ACCUSED PRODUCTS**</u>

28. Defendants' infringing products (the "Accused Products") include all of Samsung's Galaxy phones and tablets that were sold, offered for sale, made, used, or imported from at least 2018 to the present.

29. The Accused Products incorporate Transparence's patented technology without a license to do so.



12883860v1/017781

**WILLFUL INFRINGEMENT**

30. Throughout their infringement, Defendants have had actual knowledge of Transparence's patents.

31. U.S. Patent Application 15/151,977 and U.S. Patent No. 10,628,006 (the "'006 patent"), both assigned to Defendant Samsung Electronics, cite Transparence's patents, which share the same specification as the Patents-in-Suit.

32. Samsung's U.S. Patent Application No. 15/151,977, along with its prosecution history, cites Transparence's:

a. U.S. Patent Application No. 14/0230037, which matured into U.S. Patent No. 9,077,705 (the "'705 patent");

b. U.S. Patent Application No. 17/0061107, which matured into U.S. Patent No. 10,521,570 (the "'570 patent"); and

c. '705 patent.

33. Samsung's '006 patent also cites Transparence's U.S. Patent Application No. 2014/0230037, which matured into the '570 patent.

34. The Transparence patents and applications cited in Samsung's Patent Application 15/151,977 prosecution history and '006 patent share the same specification, and thus disclose the same invention, as that contained in the Patents-in-Suit.

35. In April 2018, the PTO rejected claims 1–10 of Samsung's U.S. Patent Application 15/151,977 and, in so doing, cited Transparence's U.S. Patent Application No. 14/0230037.

36. Notwithstanding their actual notice and/or actual knowledge of Transparence's patents, Defendants have deliberately and intentionally infringed, and continue to deliberately and intentionally infringe, the Patents-in-Suit.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 9,235,329

37. Transparence repeats and incorporates by reference each preceding paragraph as if fully set forth herein and further states:

38. Defendants have infringed and continue to infringe the ’329 patent directly and/or indirectly (by inducing infringement by others) by, *inter alia*, making, using, selling, importing, and/or offering for sale devices, systems, and/or methods for managing multiple applications that intake authentication requirements for multiple applications, associate them through a single login credential, and thereby unlock a menu to select applications from which to receive notifications regardless of the user’s computer environment—in the manner recited by the ’329 patent.

39. In the alternative to literal infringement, Defendants have infringed and continue to infringe the ’329 patent under the doctrine of equivalents.

40. For example, claim 1 is illustrative of the claims of the ’329 patent. It recites, “A computer-implemented method of managing notifications comprising: receiving an authentication requirement for a plurality of applications that provide messages; associating the authentication requirements for the plurality of applications that provide messages with a single login credential; after receiving the single login credential, displaying a menu listing each of the plurality of applications that provide messages; receiving, in the menu, an input from a user specifying one or more applications from the plurality of applications that the user wants to receive notifications when a message is received from the one or more applications; receiving a message from an application specified in the menu; and displaying, regardless of a computer environment context, a notification indicating that a message was received in the one or more specified applications.”

41. Defendants' Accused Products, including but not limited to the Samsung Galaxy S24 ("S24"), practice every element of these claims.[1]

42. The Accused Products have a computer-implemented method of managing notifications.

43. The Accused Products receive an authentication requirement for a plurality of applications that provide messages (for instance, Facebook and Gmail).

44. The Accused Products associate authentication requirements for a plurality of applications that provide messages with a single login credential (for example, with the user's fingerprint through Samsung Pass).

45. After receiving the single login credential (for example, the user's fingerprint), the Accused Products display an application menu that lists each of the applications that provide messages.

46. Through this application menu, the user can provide an input specifying whether the user wants to receive notifications when a message is received from applications such as Facebook, Messenger, or Gmail.

47. The Accused Products receive messages from applications specified in the application menu, including Gmail and Facebook Messenger:

48. Regardless of whether or how the user uses the Accused Products, the Accused Products display a notification indicating that the message was received from the specified application/s (for example, Gmail or Messenger).

49. Defendants' infringement of at least Claim 1 of the '329 patent is ongoing.

---

[1] This description of infringement is illustrative and not intended to be an exhaustive or limiting explanation of every manner in which Defendants' products infringe.

50. Where acts constituting direct infringement of the ’329 patent are not performed by Defendants, such acts are performed by Defendants’ customers and/or end users, who act at the direction and/or control of Defendants, with Defendants’ knowledge. Defendants took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes the ’329 patent. Such steps by Defendants include but are not limited to advising and directing customers and/or end users to use the Accused Products in an infringing manner; and/or distributing instructions that guide end users to use the Accused Products in an infringing manner. Defendants perform these steps, which constitute induced infringement, with knowledge of the Patents-in-Suit and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Products by their customers and/or end users would infringe the Patents-in-Suit. Defendants’ induced infringement is ongoing.

51. Defendants’ acts of infringement have caused damage to Transparence, and Transparence is entitled to recover from Defendants the damages that it sustained as a result of Defendants’ wrongful acts in an amount subject to proof at trial.

**COUNT II**

**INFRINGEMENT OF U.S. PATENT NO. 8,418,079**

52. Transparence repeats and incorporates by reference each preceding paragraph as if fully set forth herein and further states:

53. As for Defendants’ infringement of the ’079 patent, Transparence focuses specifically on Samsung smartphones and tablets operating in Dex mode (“Dex”). *See* https://www.samsung.com/us/apps/dex/. Dex mirrors the smartphone or tablet’s screen on an

external monitor, allowing the user to manage smartphone applications through their computer cursor and thereby mimic a desktop computer. *Id*.

54. On information and belief, Dex is available on at least the following Samsung devices: Galaxy S9, S10, S20, S21, S22, S23, S24, Note8, Note9, Note10, Note20, Z Fold3, Z Fold4, and Z Fold5 series phones, and Galaxy Tab S4, S5e, S6, S7, S8, S9, S10 and Galaxy Tab Active3 and Tab Active Pro series tablets.[2]

55. Samsung has extensively promoted Dex, including as a method of improving law enforcement, public safety, and in-vehicle computing. *See, e.g.*, https://insights.samsung.com/2023/12/19/making-the-case-for-samsung-dex-in-police-cars-3/; https://insights.samsung.com/2021/02/23/9-ways-samsung-dex-empowers-public-safety-officers-2/; https://insights.samsung.com/2022/01/05/a-closer-look-santa-barbara-police-departments-use-of-smartphones-and-dex/; https://insights.samsung.com/2024/08/29/how-samsung-is-reshaping-in-vehicle-computing-with-samsung-dex-3/.

56. Notably, Transparence created the patented technologies to support its applications for first responders working with public safety organizations. Transparence designed the patented technologies to help save lives by equipping first responders with vital information as quickly as possible to facilitate their emergency response, from initial dispatch and notification, to on-scene management, to post-incident reporting. Transparence's multi-application management systems, methods, and devices ensured first responders' efficient access to multiple sources of key information regarding hazardous materials, weapons of mas destruction, and other critical threats.

57. The public-safety use case for Dex promoted by Defendants traces directly back to Transparence's original vision and purpose for developing the patented technologies.

---

[2] Transparence will include a complete list of infringing devices in its infringement contentions.

58. Defendants have infringed and continue to infringe the ’079 patent directly and/or indirectly (by inducing infringement by others) by, *inter alia*, making, using, selling, importing, and/or offering for sale devices, systems and/or methods, including Accused Products employing Dex, which use a GUI adjacent to a cursor that includes one or more persistent application management items, and that are configured to launch and dynamically update applications associated with the persistent application management item/s.

59. In the alternative to literal infringement, Defendants have infringed and continue to infringe the ’079 patent under the doctrine of equivalents.

60. For example, claim 11 is illustrative of the claims of the ’079 patent. It recites: “A computer-implemented method for managing one or more applications comprising: receiving an input from a user; generating a graphical user interface adjacent to a cursor in response to the input received; wherein the graphical user interface comprises one or more persistent application management items that remain constant within the graphical user interface regardless of the user’s computer environment; wherein the application management items are configured for launching one or more applications associated with the application management item; and wherein the method steps are done by at least one processor” . . . “dynamically updating the one or more application items;” . . . and “providing a notification to the user when the one or more application items have been updated.”

61. Defendants’ Accused Products, including but not limited to the Samsung Galaxy, practice every element of these claims.[3]

[3] This description of infringement is illustrative and not intended to be an exhaustive or limiting explanation of every manner in which Defendants’ products infringe.

62. The Accused Products, including Samsung Galaxy phones operating in Dex Mode, perform a method for managing one or more applications.

63. The Accused Products, including Samsung Galaxy phones operating in Dex Mode, receive an input from a user.

64. The Accused Products, including Samsung Galaxy phones operating in Dex Mode, generate a graphical user interface adjacent to the computer cursor (through, for example, a double-click).

65. The double-click to pull up the GUI works regardless of which application the user is currently using (that is, irrespective of the user's computer environment). *See* '079 Spec. at col. 2:65–3:2 ("The end result is an environment where a multiplicity of applications can be 'brought to the cursor' regardless of content or environment (i.e., in a browser, in an application, on a desktop, etc.) for greater convenience and visibility."). The GUI contains application management items, which remain constant within the GUI regardless of the user's computer environment; that is, regardless of the particular application that the user accesses, the user can always return to the application management item by activating the cursor-based GUI.

66. The application management items are configured to launch multiple applications associated with them, including Google, Microsoft, and Samsung applications. For example, clicking a Google application management item enables the user to select from a variety of Google applications.

67. The Accused Products, including Samsung Galaxy phones operating in Dex Mode, perform these steps using at least one processor.

68. The Accused Products, including Samsung Galaxy phones operating in Dex Mode, have a setting available for automatically updating the applications displayed on the persistent GUI.

69. The Accused Products, including Samsung Galaxy phones operating in Dex Mode, notify the user when an application displayed on the persistent GUI has been updated.

70. Defendants' infringement of at least claim 11 of the '079 patent is ongoing.

71. Defendants' infringement as described in Count I above is equally applicable to Defendants' infringement of the '079 patent.

72. Where acts constituting direct infringement of the '079 patent are not performed by Defendants, such acts are performed by Defendants' customers and/or end users, who act at the direction and/or control of Defendants, with Defendants' knowledge. Defendants took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes claims of '079 patent. Such steps by Defendants include but are not limited to advising and directing customers and/or end users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; and/or distributing instructions that guide end users to use the Accused Products in an infringing manner. Defendants perform these steps, which constitute induced infringement, with knowledge of the patents-in-suit and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Products by their customers and/or end users would infringe the patents-in-suit. Defendants' induced infringement is ongoing.

73. Defendants' acts of infringement have caused damage to Transparence, and Transparence is entitled to recover from Defendants the damages it sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial.

**COUNT III**

**INFRINGEMENT OF U.S. PATENT NO. 11,960,580**

74. Transparence repeats and incorporates by reference each preceding paragraph as if fully set forth herein and further states:

75. Defendants have infringed and continue to infringe the '580 patent directly and/or indirectly (by inducing infringement by others) by, *inter alia*, making, using, selling, importing, and/or offering for sale devices, systems, and/or methods that intake various authentication requirements from multiple applications, associate those authentication requirements through a touch-based single manager login credential that is configured to facilitate user access to the associated applications, display an application menu that includes the associated applications, and display in that menu and adjacent to at least one of the associated applications a new-message indicator indicating the number of new messages received in that application, in the manner recited in the claims of the '580 patent.

76. In the alternative to literal infringement, Defendants have infringed and continue to infringe the '580 patent under the doctrine of equivalents.

77. For example, claim 1 is illustrative of the claims of the '580 patent. It recites, "A wireless device comprising: one or more processors; a touch screen input device coupled to the one or more processors; and a computer-readable medium comprising instructions stored therein, which when executed by the processors, cause the processors to perform operations comprising: receiving, via the touch screen input device, a first authentication requirement, wherein the first

authentication requirement is associated with a first application and provides a login credential for a service associated with the first application; receiving, via the touch screen input device, a second authentication requirement, wherein the second authentication requirement is associated with a second application and provides a login credential for a service associated with the second application and wherein the first authentication requirement is different from the second authentication requirement; associating, by the processors, the first authentication requirement and the second authentication requirement with a touch-based single manager login credential, and wherein the single manager login credential is configured to facilitate user access to the first application and the second applications; displaying an application menu including a first application item that is associated with the first application, and a second application item that is associated with the second application; and displaying, in the application menu and adjacent to the first application item, a new message indicator, and wherein the new message indicator indicates a number of new messages associated with the first application item."

78. Defendants' Accused Products, including but not limited to Samsung Galaxy phones and tablets, practice every element of these claims.[4]

79. The Accused Products, including Samsung Galaxy smartphones and tablets, are wireless devices comprising one or more processors and touchscreen input devices coupled to the one or more processors.

80. Samsung Pass is implemented by these devices. *See* https://www.samsung.com/uk/support/mobile-devices/what-is-samsung-pass/?srsltid=AfmBOopSzZGEDYg-r6VxYIr_0GbTL4f1VSzwXeAd16CkWp3Jma0o2VPq.

[4] This description of infringement is illustrative and not intended to be an exhaustive or limiting explanation of every manner in which Defendants' products infringe.

81. The Accused Products, including Samsung Galaxy smartphones and tablets equipped with Samsung Pass and related password managers, receive a first input from a user specifying a first application and an authentication requirement for the first application. For example, through Samsung Pass, a user may select an application or type in a website for which they want to add an authentication requirement for that first application.

82. A user may also add an authentication requirement for a first application for storage in Samsung Pass while accessing the first application or website.

83. For example, Samsung Pass prompts users to save an authentication requirement associated with a first application to Samsung Pass after the user types the authentication requirement into the application or website.

84. Samsung Pass receives an additional input from a user specifying an additional application and an authentication requirement for the additional application. For example, through Samsung Pass, a user may select an application or type in a website for which they want to add an authentication requirement for that additional application.

85. A user may also add an authentication requirement for an additional application for storage in Samsung Pass while accessing the additional application or website.

86. For example, Samsung Pass prompts users to save an authentication requirement associated with an additional application to Samsung Pass after the user types the authentication requirement into the application or website.

87. The Accused Products, including Samsung Galaxy smartphones and tablets equipped with Samsung Pass, associate the authentication requirement for the first application and the authentication requirement for the additional application through a single manager login credential.

88. The Accused Products use biometric authentication and/or a PIN (the single manager login credential) to authenticate users and auto-fill authentication requirements into a first application and an additional application.

89. A user may set one PIN or use their fingerprint (biometric authentication) to gain access to any number of applications for which they stored authentication requirements.

90. The Accused Products display an application menu that includes application items (i.e., icons) associated with various applications.

91. The Accused Products display, in the application menu and adjacent to applications associated with the single manager login credential, new-message indicators indicating a number of new messages received in that application.

92. Defendants' infringement of at least claim 1 of the '580 patent is ongoing.

93. Further, Defendants' infringement as described in Count I above is equally applicable to Defendants' infringement of the '580 patent.

94. Where acts constituting direct infringement of the '580 patent are not performed by Defendants, such acts are performed by Defendants' customers and/or end users, who act at the direction and/or control of Defendants, with Defendants' knowledge. Defendants took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes claims of '580 patent. Such steps by Defendants include but are not limited to advising and directing customers and/or end users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; and/or distributing instructions that guide end users to use the Accused Products in an infringing manner. Defendants perform these steps, which constitute induced infringement, with knowledge of the patents-in-suit and with the knowledge that the

induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Products by their customers and/or end users would infringe the patents-in-suit. Defendants' induced infringement is ongoing.

95. Defendants' acts of infringement have caused damage to Transparence, and Transparence is entitled to recover from Defendants the damages it sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial.

**WILLFUL INFRINGEMENT**

96. Transparence repeats and incorporate by reference each preceding paragraph as if fully set forth herein and further states:

97. Defendants' infringement of the Patents-in-Suit was and continues to be willful, intentional, deliberate, and/or in conscious disregard of Transparents' rights under the Patents-in-Suit.

98. For one nonexhaustive example, Defendants received actual notice and/or had actual knowledge of Transparence's published U.S. Patent Application No. 14/0230037, which matured into the '570 patent, no later than April 2018, when a patent examiner cited the application in rejecting proposed claims in Samsung's Application 15/151977. Those materials include the same specification as that contained in the Patents-in-Suit. On information and belief, despite actual knowledge of Transparence's U.S. Patent Application No. 14/0230037, Defendants deliberately and intentionally infringed the Patents-in-Suit.

99. Likewise, Defendants received actual notice and/or had actual knowledge of Transparence's U.S. Patent Application No. 14/0230037, which matured into the '570 patent, again in April 2020 when U.S. Patent No. 10,628,006, assigned to Defendant Samsung Electronics, issued and expressly cited it. On information and belief, despite actual knowledge of

Transparence's U.S. Patent Application No. 14/0230037, Defendants deliberately and intentionally infringed the Patents-in-Suit.

100. As yet another example, Defendants received actual notice and/or had actual notice of Transparence's published U.S. Patent Application No. 17/0061107 no later than September 2018 when it was cited in the prosecution history for Samsung's Application 15/151977. Transparence's Application 17/0061107 contains the same specification, and thus discloses the same invention, as the Patents-in-Suit. On information and belief, despite actual knowledge of Transparence's U.S. Patent Application No. 17/0061107, Defendants deliberately and intentionally infringed the Patents-in-Suit.

101. Additionally, Defendants received actual notice and/or had actual knowledge of Transparence's U.S. Patent No. 9,077,705 (the "'705 patent") no later than September 2018 when it was cited in the prosecution history for Samsung's Application 15/151977. Transparence's Application 17/0061107 contains the same specification, and thus discloses the same invention, as the Patents-in-Suit. The '705 patent contains the same specification, and thus discloses the same invention, as the Patents-in-Suit. On information and belief, despite actual knowledge of Transparence's '705 patent, Defendants deliberately and intentionally infringed the Patents-in-Suit.

102. Moreover, the filing of this lawsuit provides Defendants with further notice of each of the Patents-in-Suit such that any continued infringement by Defendants after the filing date of this lawsuit constitutes willful infringement.

103. Defendants willfully infringed and continue to infringe the Patents-in-Suit, having actual knowledge of the patents.

## DEMAND FOR JURY TRIAL

104. Plaintiff demands a jury trial on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Transparence, LLC requests entry of judgment in its favor and against Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc., as follows:

a) Declaration that Defendants have infringed and continue to infringe United States Patent Nos. 9,235,329; 8,418,079; and 11,960,580.

b) Awarding damages, in an amount no less than a reasonable royalty, arising out of Defendants' infringement of United States Patent Nos. 9,235,329; 8,418,079; and 11,960,580 to Transparence, LLC, together with pre-judgment and post-judgment interest, in an amount according to proof;

c) Awarding pre-issuance damages pursuant to 35 U.S.C. § 154(d);

d) Awarding the trebling of any and all damages awarded to Transparence by reason of Defendants' willful infringement of United States Patent Nos. 9,235,329; 8,418,079; and 11,960,580, pursuant to 35 U.S.C. § 284;

e) Awarding attorney's fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

f) Awarding such other costs and further relief as the Court may deem just and proper.

DATED: November 11, 2024

Respectfully submitted,

By: /s/ Shawn Blackburn

Shawn Blackburn
Texas State Bar No. 24089989
sblackburn@susmangodfrey.com
Ryan Caughey
Texas State Bar No. 24080827
rcaughey@susmangodfrey.com
Michael B. Brightman
Texas State Bar No. 24106660
mbrightman@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

/s/ Andrea L. Fair

Andrea L. Fair
Texas State Bar No. 24078488
andrea@millerfairhenry.com
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR PLAINTIFF TRANSPARENCE, LLC**