PUBLIC VERSION

[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

**TRANSPARENCE, LLC,**

**Plaintiff,**

**v.**

**SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.,**

**Defendants.**

**Civil Action No.: 2:24-cv-00910-RWS**

**JURY TRIAL DEMANDED**

**DEFENDANTS' MOTION TO EXCLUDE AND STRIKE EXPERT TESTIMONY AND OPINIONS OF CHARLES MAURO**

[redacted]

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. OVERVIEW OF MAURO'S APPORTIONMENT OPINIONS ........ 2

III. LEGAL STANDARD ........ 6

IV. ARGUMENT ........ 7

A. Mauro's Apportionment Opinions are Unreliable and Should be Excluded. ........ 7

1. Mauro's [redacted] "GUI Value" Opinion is Unreliable. ........ 7

2. Mauro's Conclusion that [redacted] and [redacted] of the "GUI Value" is Attributable to the Accused Functionalities is Arbitrary and Unreliable. ........ 8

3. Mauro's Conclusion that the Accused Functionalities Account for [redacted] and [redacted] of Total Galaxy Device Revenue Ignores Reality and is Unreliable. ........ 11

4. Mauro's Alternative "Per-Device Value" Apportionment Applicable Only to the '329 and '580 Patents is Untethered to the Facts. ........ 12

5. Mauro's Apportionment Improperly Lumps the '329 and '580 Patents Together. ........ 13

B. Mauro's Apportionment Opinions Should Be Struck Under Rule 37. ........ 13

C. Mauro's [redacted] Opinion Has No Nexus to the Patented Technology and Must Be Excluded. ........ 15

V. CONCLUSION ........ 15

[redacted]

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)....................1, 6, 7, 9

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
2017 WL 5137401 (E.D. Tex. Nov. 3, 2017)....................8

*Estech Sys. IP, LLC v. Carvana LLC*,
2023 WL 3292881 (E.D. Tex. May 5, 2023)....................14

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*,
879 F.3d 1332 (Fed. Cir. 2018)....................9

*Finjan, Inc. v. Sophos, Inc.*,
2016 WL 4268659 (N.D. Cal. Aug. 15, 2016)....................13

*Fractus, S.A. v. Samsung*,
No. 6:09-cv-203, 2011 WL 7563820 (E.D. Tex. Apr. 29, 2011)....................8

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)....................11

*Lucent Techs. Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)....................13

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
10 F.4th 1358 (Fed. Cir. 2021)....................14

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
30 F.4th 1339 (Fed. Cir. 2022)....................12

*Paltalk Holdings, Inc. v. Cisco Sys., Inc.*,
2025 WL 2581690 (W.D. Tex. Aug. 27, 2025)....................13

*Parallel Networks Licensing, LLC v. Microsoft Corp.*,
777 F. App'x. 489 (Fed. Cir. 2019)....................7

*Sloan Valve Co. v. Zurn Indus., Inc.*,
33 F. Supp. 3d 984 (N.D. Ill. 2014)....................15

*Uniloc USA Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011)....................8

[redacted]

*Unwired Planet, LLC v. Apple Inc.*,
2017 WL 589195 (N.D. Cal. Feb. 14, 2017) ....................8

*VirnetX, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014)....................8

*Wash World Inc. v. Belanger Inc.*,
131 F.4th 1360 (Fed. Cir. 2025) ....................15

*Wirtgen Am., Inc. v. Caterpillar, Inc.*,
715 F. Supp. 3d 587 (D. Del. 2024)....................13

[redacted]

# I. INTRODUCTION

Samsung respectfully requests that the Court exclude and strike the opinions and testimony of Transparence, LLC's ("Transparence") touted human factors expert, Charles Mauro ("Mauro"), in their entirety for multiple independent reasons.

*First*, Mauro's conclusion as to the relative value of the allegedly infringing functionalities of the accused Galaxy devices results from precisely the sort of "plucked from thin air" apportionment the Federal Circuit finds unreliable and inadmissible under Rule 702 and *Daubert*. Specifically, Mauro first points to [redacted] to conclude that [redacted] of the value of any accused Galaxy device is attributable to its graphical user interface ("GUI"). Mauro offers no supposed expertise or explanation in coming up with this figure, which stems from [redacted]. Next, relying on nothing more than his "professional expertise as an expert in GUI design," Mauro concludes that, of the supposed [redacted] value attributable to the GUI, [redacted] goes to the accused functionality for the '329 and '580 Patents, and [redacted] goes to the accused functionality for the '079 Patent. But, fatally, Mauro does not show ***how*** he calculated these specific percentages in any way. Finally, Mauro multiplies these "device value" percentages together to conclude that [redacted] and [redacted] of the ***total revenue*** from sales of the accused Galaxy devices is attributable to the alleged infringement of the '329 and '580 Patents and the '079 Patent, respectively. Mauro offers these conclusions, amounting to [redacted], without ***any*** evidence that any customer has even considered purchasing the accused Galaxy devices even in part because of the accused functionalities, much less actually used them.

*Second*, during fact discovery, and in response to Samsung's on-point interrogatory request, Transparence never disclosed Mauro's (1) apportionment methodology, (2) the

[redacted]

percentages he offered, which are the royalty rates that Transparence's damages expert, Dr. Jennifer Vanderhart, uses for her damages calculation, or (3) any documents Mauro relied on in coming up with his apportionment percentages. Transparence was obligated to seasonably update its contention interrogatory responses well before the close of discovery to disclose each of these items. Its failure to do has prejudiced Samsung and alone warrants exclusion of Mauro's opinions under the governing case law.

*Third*, Mauro concludes that the patented technology [redacted] Dr. Vanderhart then relies on this conclusion to sweep into her damages calculation [redacted]. But Mauro provides no evidence or explanation of any nexus between the patented technology and [redacted] much less any evidence as to how they are functionally and inextricably intertwined to warrant such a conclusion under Federal Circuit precedent. This unsupported, entirely speculative conclusion (i.e., the opposite of a reliable expert opinion based on facts that will help the jury decide damages) should also be excluded.

## II. OVERVIEW OF MAURO'S APPORTIONMENT OPINIONS

Transparence accuses convoluted manners of using various combinations of features of Samsung's Galaxy smartphones and tablets, including Edge Panel, DeX, Secure Folder, and Pass, of infringing U.S. Patent Nos. 8,418,079 ("'079 Patent"), 9,235,329 ("'329 Patent"), and 11,960,580 ("'580 Patent") (together, "Asserted Patents"). Transparence's damages expert, Dr. Jennifer Vanderhart, relying on Transparence's technical expert, Dr. Scott Schaefer, defines the accused combination of functionalities for the '079 Patent as [redacted] or [redacted]

[redacted]

[redacted] Ex. 5 ¶ 30.[1] Dr. Vanderhart defines the accused functionality for the '329 and '580 Patents as [redacted] *Id.* ¶ 31.

Mauro served a report in this case on May 27, 2026 purporting to "analyze[ ] the relative value of the patented functionalities to the accused Samsung Galaxy devices." Ex. 1 at 6, 39.[2] The purpose of Mauro's apportionment opinion is for Dr. Vanderhart to rely on it for her reasonable royalty damages calculation. Mauro's apportionment methodology has only two steps. At the first step, he concludes that "[redacted] of the total value of a Samsung Galaxy device is attributable to its graphical user interface, or GUI." *Id.* at 39. Mauro came up with this [redacted] GUI value figure entirely from [redacted]. *See* Ex. 1 at 38–40; Ex. 3. [redacted]

Specifically, to come up with his opinion that [redacted] of the Galaxy device value is the GUI, Mauro relied on [redacted]. Indeed, there is no dispute that [redacted]. [redacted]

---

[1] All exhibits cited herein are provided with the accompanying declaration of Paul Wilson.

[2] Mauro's report does not have any paragraph numbers, thus violating the Court's Discovery Order (Dkt. 29). Because no paragraph numbers were provided, only pages numbers of Mauro's report can be cited herein.

[redacted]

[redacted] *Id.* at 40; Ex. 3 (SAM-TRANSP-SEA_0017313 at -336). [redacted] *Id.* Based on [redacted], Mauro bootstrapped [redacted] into a supposed weighted-average calculation to arrive at his opinion that [redacted] *See* Ex. 1 at 40–41.[3]

Mauro then purported to determine what portion of this supposed [redacted] GUI value was attributable to the accused functionalities. Mauro first addressed the accused functionality for the ’329 and ’580 Patents (i.e., Mauro did not apportion between these patents individually, instead he lumped them together). In particular, Mauro asserted that his "***qualifications and background as an expert*** in GUI design and human factors enable [him] to apportion the value of the device's (largely GUI-driven) software elements to the patented technology." Ex. 1 at 42. He then concluded based solely on that supposed "professional experience as an expert in GUI design and user testing"—i.e., without ***any*** other evidence or bases—that [redacted] of the total [redacted] GUI value is attributable to the accused functionality for the ’329 and ’580 Patents. *Id.* at 45. But Mauro never showed ***how*** he calculated this apportionment range. Indeed, while Mauro contended in his report that he based this critical apportionment range "on [Keystroke-Level Model ("KLM")]

[3] All emphasis added unless otherwise stated.

[redacted]

analysis on the time savings that accrues to the user from the patented features; research that allows for the estimation of the impact of such time savings on the user's performance using the devices[,] Samsung's own documents and testimony," and "available customer feature usage data," *id.* at 43, he did not explain ***how*** any of these supposed generalized bases allowed him to calculate the specific apportionment percentage range he offered. Finally, Mauro multiplied this [redacted] apportionment range by his [redacted] "GUI value" conclusion to conclude that [redacted] of the ***total revenue*** from sales of Samsung's accused Galaxy devices is attributable solely to the accused combination of functionalities for the '329 and '580 Patents. *Id.* at 43. Critically, however, Mauro points to ***zero*** evidence that any customer has actually ever used the accused combination of functionalities with respect to the '329 and '580 Patents or that any customer ever even ***considered*** the accused functionality in part when deciding whether to purchase an accused Galaxy device.

Mauro next performed the same "analysis" for the '079 Patent. Indeed, Mauro stated that the apportionment he conducted for the accused combination of functionalities for the '079 Patent comes from the same "methodology applied to the '329 and '580 in [his] report"—i.e., an unexplained methodology reliant entirely on Mauro's supposed "professional experience" without any evidence or explanation as to how he calculated the resulting apportionment percentage. *Id.* at 63. Pursuant to that unexplained methodology, Mauro concluded that the accused combination of functionalities for the '079 Patent account for [redacted] of the [redacted] "GUI value" of an accused Galaxy device. *Id.* at 61. From that, Mauro concluded that the accused combinations of functionalities concerning the '079 Patent account for [redacted] of the ***total revenue*** of Samsung's sales of the accused Galaxy devices, *id.*, even though he again offers ***no evidence*** that anybody has ever actually used the accused combinations of functionalities for the '079 Patent or that anybody has ever even considered purchasing an accused Galaxy device even in part because of them.

[redacted]

Mauro also offers an alternative "per-device apportionment" specific to the accused combination of functionalities for the '329 and '580 Patents only. *Id.* 58–60. Specifically, Mauro asserts that, pursuant to KLM analyses he performed, the "time saved per Samsung Pass authentication" when a user actually uses the accused combination of functionalities on a Galaxy device is between 5.54 – 8.96 seconds. *Id.* at 59–60. Mauro then concludes this purported time savings translates to "per-device value" of $23.22 – $37.56 when a customer purchases a Galaxy phone. *Id.* Critically, Mauro's "per-device value" conclusion depends entirely on his assumption that the "typical Samsung Galaxy smartphone user" actually uses the accused combination of functionalities concerning the '329 and '580 Patents "approximately six times per active day." *Id.* at 59. Again, Mauro offers no evidence that anybody has actually used the accused combination of functionalities for the '329 and '580 Patents at all, much less any extent of actual usage. *Id.*

Lastly, unrelated to his apportionment conclusions for the accused functionalities of the Asserted Patents, Mauro opines that the combination of the claimed methods of the asserted claims of the '329 and '580 Patents together are "the proximate mechanism" [redacted] *Id.* at 18. Again, Mauro offers no evidence for this conclusion much less any evidence that the accused combination of functionalities with respect to the '329 and '580 Patents have any nexus or functional relationship with [redacted]

## III. LEGAL STANDARD

Federal Rule of Evidence 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically

[redacted]

valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592-93. The proponent of expert testimony must prove it satisfies Rule 702. *Id*. at 589-90.

## IV. ARGUMENT

### A. Mauro's Apportionment Opinions are Unreliable and Should be Excluded.

Each step of Mauro's apportionment methodology is unreliable and lacks factual foundation, including his alternative "per-device value" apportionment, and should be excluded.

#### 1. Mauro's [redacted] "GUI Value" Opinion is Unreliable.

The first, and most substantial, component of Mauro's apportionment opinion—the [redacted] "GUI value" conclusion—depends solely on [redacted]. As provided above, [redacted]. Thus, [redacted] that Mauro relies on do not purport to measure the value of the Asserted Patents, the accused functionalities, or the incremental value attributable to the asserted claims—indeed, they do not even measure the value of ***GUIs*** to smartphones, which is the very conclusion that Mauro derives from [redacted].

Mauro does not identify any methodology showing how [redacted] can be translated into the value of the specific patented functionalities at issue here, much less specific percentages of incremental revenue purportedly attributable to the accused functionalities as Mauro ultimately concludes. A survey and related expert testimony should be excluded when the survey questions contain broad language that does not distinguish between infringing and non-infringing features and the expert testimony does not "bridge the gap" between the survey results and the question in issue. *Parallel*

[redacted]

*Networks Licensing, LLC v. Microsoft Corp.*, 777 F. App'x. 489, 492-93 (Fed. Cir. 2019) (affirming the district court's order excluding a survey because the survey failed to distinguish between infringing and non-infringing uses). Accordingly, Mauro's reliance on this single, obscure source of information, totally disconnected from the alleged infringement and patented technology, alone warrants exclusion of his opinion. *See, e.g.*, *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014) (damages evidence must be tied to "the claimed invention's footprint in the market place," not to generalized product-category preferences); *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, 2017 WL 5137401 at *10 (E.D. Tex. Nov. 3, 2017) (survey questions must relate to the allegedly infringing features). Courts have thus found that an expert may not simply plug survey percentages into damages analysis without tying the survey categories with the accused functionalities. *See, e.g.*, *Uniloc USA Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011) (rejecting a damages methodology that could not be tied to the record with the required specificity); *Fractus, S.A. v. Samsung*, No. 6:09-cv-203, 2011 WL 7563820, at *1 (E.D. Tex. Apr. 29, 2011) (excluding survey evidence because "the surveys do not measure how consumers value the purported advantages provided by Plaintiff's technology"); *Unwired Planet, LLC v. Apple Inc.*, 2017 WL 589195, at *1 (N.D. Cal. Feb. 14, 2017) (excluding the survey results relating to the '260 patent, along with all damages estimates hinging on those survey results, because the survey's definition of the accused feature was "ill-defined," making the survey "targeted at an invention other than the one at issue in this litigation").

### 2. Mauro's Conclusion that [redacted] and [redacted] of the "GUI Value" is Attributable to the Accused Functionalities is Arbitrary and Unreliable.

Mauro's conclusion that [redacted] and [redacted] of the [redacted] "GUI value" to the accused Galaxy devices is attributable to the accused combinations of functionalities for the '329 and '580 Patents and the '329 Patent, respectively, is precisely the type of "plucked from thin air"

[redacted]

apportionment that the Federal Circuit repeatedly excludes under Rule 702 and *Daubert*. For example, in *LaserDynamics, Inc. v. Quanta Computer, Inc.*, the Federal Circuit excluded an experts "one-third apportionment" applied for purposes of calculating damages because it "appear[ed] to have been plucked out of thin air based on vague qualitative notions of the relative importance of the . . . technology." 694 F.3d 51, 69 (Fed. Cir. 2012). Additionally, in *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, the Federal Circuit excluded an expert's 5% apportionment/royalty rate opinion where the expert "plucked the 5% royalty rate out of nowhere." 879 F.3d 1332, 1351 (Fed. Cir. 2018). The Federal Circuit further determined that "[i]t is not enough for an expert to simply assert that a particular royalty rate is reasonable in light of the evidence without tying the proposed rate to that evidence." *Id.*

This is exactly what Mauro has done here. Starting with the '329 and '580 Patents, Mauro proclaims that his "***qualifications and background***" "enable [him] to apportion the value of the" accused Galaxy devices "to the patented technology." Ex. 1 at 42. Mauro then relies on nothing but his supposed "***professional experience***" to conclude that the accused combination of functionalities for the '329 and '580 Patents account for [redacted] of the value of the GUI of any accused Galaxy device. But Mauro does not show ***how*** he calculated these apportionment percentages, the variables he used for the calculation, or even a methodology by which he derived these apportionment percentages. While Mauro's report contends that he supposedly considered "KLM analysis on the time savings that accrues to the user from the patented features[,] research that allows for the estimation of the impact of such time savings on the user's performance using the devices[,] Samsung's own documents and testimony," and "customer feature usage," *id.* at 43, he does not bother to show how these considerations impacted, much less resulted in the specific percentages he came up with. Mauro similarly did not show how he calculated the inverse of these

[redacted]

percentages—i.e., the [redacted] he supposedly attributes to non-accused aspects of the GUI of a Galaxy device. *Id.* at 45–56.

Mauro repeats the same unreliable process in coming up with the supposed [redacted] value of the total [redacted] "GUI value" he asserts is attributable to the accused combinations of functionalities for the '079 Patent. In particular, Mauro asserts that he employs the same process for the '079 Patent as he did for the '329 and '580 Patents: an unsupported methodology based entirely on his "professional experience" that does not show ***how*** he calculated the specific apportionment percentages that he offers, the variables he used for the calculation, or the supposed methodology underlying the calculation. While Mauro's report again contends that he considered his "KLM analysis and [his] GUI experience and expertise, as well as the testimony of [Samsung's witness] Taebong Ha," *id.* at 64, he again does nothing to show how these considerations impacted or were even involved in his calculation of the specific [redacted] apportionment figure he offers.

Further, even if his apportionment percentages were calculated from his KLM analyses—they were not, or at a minimum, Mauro does nothing to show how they were—the KLM methodology is not an accepted, proven, reliable method for apportioning the value of patented technology, much less to the multi-feature, modern Galaxy devices here. Mauro fails to identify any reported decision, patent-damages treatise, or article that recognized KLM as an accepted method of apportioning patent damages. That is hardly surprising, as KLM has nothing to do with the value of a specific software application or feature. Instead, KLM is a usability-engineering tool that predicts the time that an expert, error-free user would need to complete a routine task on a conventional computer system. KLM makes this determination by summing standardized time estimates for keystrokes, pointing, homing, mental preparation, and system response. The transplantation of a human-computer interface design tool into the role of a patent apportionment

[redacted]

methodology, without any adaptation, testing, or peer scrutiny for that purpose, is exactly the kind of "analytical gap between the data and the opinion proffered" that a court need not — and should not — bridge for the expert. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Mauro's "plucked from thin air" apportionment percentages for the accused combinations of functionalities for the Asserted Patents is arbitrary, unreliable, and should be excluded. *See LaserDynamics*, 694 F.3d at 69; *Exmark*, 879 F.3d at 1351.

### 3. Mauro's Conclusion that the Accused Functionalities Account for [redacted] and [redacted] of Total Galaxy Device Revenue Ignores Reality and is Unreliable.

At the last step of his apportionment, Mauro takes the [redacted] and [redacted] "device value" he arbitrarily assigns to the accused functionalities, takes his unreliable [redacted] "GUI value" figure, multiples them together, and concludes that the resulting [redacted] and [redacted] represents the portion of Samsung's ***total revenue*** for sales of the accused Galaxy devices supposedly attributable to the accused functionalities of the Asserted Patents. Mauro, however, offers no evidence, explanation, or economic analysis as to how he converts his "device value" percentages into specific portions of Samsung's overall revenue from sales of the accused Galaxy devices. Mauro further cites ***no*** evidence that anyone has ever even considered purchasing an accused Galaxy device even in part because of any of the accused combinations of functionalities by Transparence, or any evidence that any customer has ever even used the accused combinations.

Faced with similar circumstances the court in *Realtime Data, LLC v. Oracle Am., Inc.*, found that the plaintiff's technical expert's "opinions about the technical value of the accused products—and specifically opinions about the incremental benefit conferred by the patented features of the accused products on the technology . . . may not be the final apportionment value itself." 2017 WL 11574028, at *5 (E.D. Tex. Mar. 30, 2017). The court held that the plaintiff's damages expert "cannot simply rely on the technical value [the technical expert] ascribes to the

[redacted]

infringing features of the accused products in determining a proper apportionment value." *Id.* Mr. Mauro and Dr. Vanderhart likewise should not be allowed to do so here.

**4. Mauro's Alternative "Per-Device Value" Apportionment Applicable Only to the '329 and '580 Patents is Untethered to the Facts.**

As provided above, as an alternative to the foregoing apportionment opinions, Mr. Mauro offers a "per-device value" apportionment opinion specific to the '329 and '580 Patents, wherein he concludes that using the accused combination of functionalities saves a Galaxy device user between 5.54 – 8.96 seconds per use compared to the prior art. Ex. 1 at 58–60. Mauro converts this purported time savings to a "per-device value" of $23.22 – $37.56 when a customer purchases a Galaxy phone. *Id.* Mauro's conclusion relies on the assumption that a typical Galaxy device user uses the accused combination of functionalities at least "six times per active day." *Id.* at 59.

Mauro's opinion is thus fatally flawed and unreliable as this assumption has ***no*** factual foundation. Specifically, Mauro offers ***no*** evidence that anybody has actually ever used the accused combination of functionalities concerning the '329 or '580 Patents, much less any extent of such usage, as required for his assumption. Indeed, Transparence's other experts have admitted the lack of any evidence of actual usage of the accused combinations. For example, Transparence's technical expert, Dr. Schaefer admitted that he was not aware of ***any*** instance of an individual performing the claimed methods, other than Transparence's lawyers and himself. Ex. 4 at 131:17-19. Dr. Vanderhart likewise admitted she is also not aware of anyone using the allegedly infringing functionalities for any of the patents-in-suit. Ex. 6 at 229:7–233:24, 236:14–237:12. Mauro's alternative "per-device value" apportionment should thus be excluded, as it relies on an assumption of actual usage that has no factual foundation. *See, e.g.*, *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022) (affirming exclusion of damages expert's opinions where he "did not address or rely on any evidence . . . that estimated the amount or percentage of

[redacted]

sold devices that were actually used to infringe the claimed method"); *see also Lucent Techs. Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334 (Fed. Cir. 2009) (rejecting damages where "evidence [was] conspicuously devoid of any data about how often consumers use the patented" feature); *Paltalk Holdings, Inc. v. Cisco Sys., Inc.*, 2025 WL 2581690, at *10 (W.D. Tex. Aug. 27, 2025) (granting new trial on damages where the plaintiff's experts "did not address or rely on any evidence that estimated use of the" allegedly infringing feature of the accused product).

#### 5. Mauro's Apportionment Improperly Lumps the '329 and '580 Patents Together.

Mauro's apportionment opinions should also be excluded for the independent reason that he does not distinguish between the '329 and '580 Patents in offering his apportionment percentages, thus leaving the jury with no reliable way to determine what value either patent actually contributed. Mauro admits assigning a single apportionment percentage to the '329 and '580 patents collectively, rather than separately valuing each patent. *See* Ex. 2 at 67–71. This alone warrants excluding his apportionment as to the two patents. *See, e.g., Finjan, Inc. v. Sophos, Inc.*, 2016 WL 4268659, at *4 (N.D. Cal. Aug. 15, 2016) ("by apportioning the value of the threat engine feature to" two patents the apportionment method "assumes that both patents add the full value of that feature to the SAV Engine. As discussed, this is not possible under patent law; therefore this apportionment calculation is not a reliable methodology for calculating a reasonable royalty."); *Wirtgen Am., Inc. v. Caterpillar, Inc.*, 715 F. Supp. 3d 587, 593 (D. Del. 2024) (excluding damages opinion which did not include any patent-by-patent apportionment, finding that expert's "approach therefore leaves open the possibility of awarding damages for features that the jury finds not to be infringing.").

### B. Mauro's Apportionment Opinions Should Be Struck Under Rule 37.

During fact discovery, Samsung requested that Transparence "identify the complete factual

[redacted]

and legal bases for [its] claim for damages" and "the specific inputs that [it] alleges should be used . . . in the damages calculation," including, for example, "the royalty rate," as well as "all documents and things on which such calculation is based." Ex. 7 at 18. In response, Transparence ***never*** mentioned Mr. Mauro's apportionment percentages, his underlying theories and methodologies (for example, the KLM methodology), or any documents Mauro relied on in connection with offering his apportionment opinions—including, critically, [redacted] Mauro's [redacted] "GUI value" opinion relies solely on. *See id.* at 18–21. Given Transparence's failure to identify these in Mauro's apportionment theory, the apportionment percentages themselves, and the underlying documents during fact discovery in response to Samsung's discovery requests, the Court should strike Mauro's apportionment opinions in their entirety, or at a minimum the non-disclosed documents he relies on. *See* Fed. R. Civ. P. 37(c)(1); *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1371 (Fed. Cir. 2021) (affirming district court's striking of damages expert opinion because the patentee failed to disclose the royalty rate the damages expert offered and the documents relied on by the damages expert to come up with the royalty rate); *see also Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *7-8 (E.D. Tex. May 5, 2023) (excluding damages expert's opinions for failure to disclose underlying facts and theories during fact discovery). While Mauro's (unreliable) apportionment opinions are vital to Dr. Vanderhart's damages opinion, the other applicable Fifth Circuit factors heavily favor striking them: (1) Transparence has no explanation for its failure to disclose Mauro's apportionment techniques during fact discovery, (2) Samsung was substantially prejudiced by not being put on notice of these apportionment techniques during fact discovery and thus deprived of the opportunity to pursue discovery about them—indeed Samsung was forced to retain an additional expert witness (Dr. Ben Bederson) to rebut Mr. Mauro's opinions, and (3) with expert discovery already closed, dispositive

[redacted]

motions already due, and trial just months away, a continuance would not cure this prejudice. *Majestic Oil, Inc.*, 2023 WL 2549892, at *3 (5th Cir. Mar. 17, 2023) (providing four factors for striking expert testimony under Rule 37).

### C. Mauro's [redacted] Opinion Has No Nexus to the Patented Technology and Must Be Excluded.

Mauro concludes, without any evidence or explanation, that the accused combination of functionalities with respect to the '329 and '580 Patents together [redacted] Ex. 1 at 18. Dr. Vanderhart relies exclusively on this unsupported exclusion to [redacted]. Again, Mauro offers no evidence for this conclusion much less any evidence that the accused combination of functionalities with respect to the '329 and '580 Patents have any nexus or functional relationship with [redacted]

Federal Circuit precedent demands a discernible, evidence-based nexus between the patented invention and the proposed royalty base — not an inferential chain. Here, Mauro offers none, and thus his opinion should be excluded. *See, e.g.*, *Wash World Inc. v. Belanger Inc.*, 131 F.4th 1360, 1375–76 (Fed. Cir. 2025) (vacating convoyed sales portion of damage award for lack of any evidence of a functional relationship between the patented invention and the convoyed products); *Sloan Valve Co. v. Zurn Indus., Inc.*, 33 F. Supp. 3d 984, 996-99 (N.D. Ill. 2014) (excluding sales of non-accused products from royalty base).

## V. CONCLUSION

For the foregoing reasons, Samsung respectfully requests that the Court exclude and strike Mauro's apportionment opinions in their entirety.

[redacted]

Dated: July 24, 2026

/s/ *Brian G. Bieluch*

Richard L. Rainey (D.C. Bar. No. 452996)
Kevin B. Collins (D.C. Bar No. 445305)
Paul J. Wilson (D.C. Bar. No. 473645)
Cyrus S. Nasseri (D.C. Bar No. 1632387)
Kee Young Lee (D.C. Bar No. 1725281)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 778-5565
RRainey@cov.com | KCollins@cov.com
PWilson@cov.com | CNasseri@cov.com |
KYLee@cov.com

Brian Bieluch (CA Bar. No. 331167)
Ali Mojibi (CA Bar No. 265332)
Michael R. Morey (CA Bar No. 313003)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars,
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
BBieluch@cov.com | AMojibi@cov.com
MMorey@cov.com

Patrick N. Flynn (CA Bar No. 286108)
**COVINGTON & BURLING LLP**
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
PFlynn@cov.com

Melissa R. Smith (Texas Bar No. 24001351)
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

*Attorneys for Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.*

[redacted]

**CERTIFICATE OF CONFERENCE**

On July 24, 2026, counsel for Defendants met and conferred with counsel for Plaintiff, as required by Local Rule 7(h) concerning this motion. Counsel for Plaintiff confirmed that Plaintiff opposes this motion. Discussions conclusively ended at an impasse, leaving an open issue for the Court to resolve.

/s/ *Brian Bieluch*
Brian Bieluch

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via electronic mail and with notice of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on July 24, 2026.

/s/ *Brian Bieluch*
Brian Bieluch

[redacted]