[redacted]

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

**TRANSPARENCE, LLC,**

**Plaintiff,**

**v.**

**SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.,**

**Defendants.**

**Civil Action No.: 2:24-cv-00910-RWS**

**JURY TRIAL DEMANDED**

# DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE AND STRIKE EXPERT TESTIMONY AND OPINIONS OF CHARLES MAURO

[redacted]

## TABLE OF CONTENTS


I. Introduction ........ 1

II. Mauro's Two Apportionment Opinions Are Unreliable. ........ 2

A. Mauro's Survey-Based Apportionment is Unreliable. ........ 2

B. Mauro's Alternative "Per-Device" Apportionment is Unreliable. ........ 4

III. Rule 37 Requires Excluding Both of Mauro's Apportionment Alternatives. ........ 4

IV. Mauro's "App Ecosystem" Opinion Has No Evidentiary Foundation. ........ 5

V. Conclusion ........ 5

[redacted]

## I. Introduction

Transparence's Opposition confirms that the Court should exclude (i) both of Mauro's apportionment opinions as unreliable or, alternatively, under Rule 37, and (ii) Mauro's "app-ecosystem" opinion for lack of any evidentiary basis. As to the apportionment opinions, neither one of Mauro's two alternatives is reliable. The first ("survey-based") apportionment is flawed for two independent reasons. *First*, Mauro does not explain why he assumed that [redacted] of the accused device value comes from the graphical user interface ("GUI"). Transparence says Mauro relied on Samsung's own survey. But that survey [redacted]. Transparence also argues that a GUI "mediates" all software. That is incorrect; many software applications do not even have a GUI. Even if [redacted], it would not follow that the GUI is responsible for [redacted] of the value of the accused devices. *Second*, Transparence cannot defend how Mauro converts his [redacted] GUI valuation to the [redacted] "device values" or [redacted] revenue percentages that drive Vanderhart's damages model. Mauro assigned those figures with no disclosed methodology—no weighting criteria, scoring rubric, or explanation of why one feature warrants a certain percentage over another.

Mauro's second ("per-device") apportionment opinion (offered for only the '329 and '580 patents) is also unreliable. Transparence argues that the per-device apportionment is based on a KLM estimate of purported time saved using the accused combination instead of a "next-best alternative" product called LastPass. But Mauro simply assumed that a certain percentage in time-savings equals the same percentage in value of the device. That obviously makes no sense, and Mauro has no methodology to bridge this inferential leap. Mauro's "per-device" apportionment is also premised on the false assumption that users use the accused combination six times per day, but there is no evidence that any user has ever used the accused combination.

[redacted]

Both of Mauro's alternative apportionments should also be excluded under Rule 37. Transparence argues it disclosed Mauro's methodology by referencing "mapping U.S. sales to functions." That is too farfetched. Transparence mentioned only "*Georgia-Pacific* factors" and "a bargaining-range framework," not any apportionment methodology, much less KLM and the comparison of the accused combination to the "next-best alternative" LastPass. Samsung had no opportunity to develop fact discovery concerning the withheld information.

Finally, Transparence's Opposition points to no evidence supporting Mauro's "app ecosystem" opinion. Specifically, Mauro and Transparence fail to identify any evidence of a causal connection between the accused combinations and the non-accused Galaxy Store product. The Federal Circuit in *Exafer Ltd. v. Microsoft Corp.*, 169 F.4th 1089 (Fed. Cir. 2026), demands a discernible, evidence-based causal connection between the patented invention and any unaccused product included in the royalty base. The Court should exclude Mauro's opinion for lacking one.

## II. Mauro's Two Apportionment Opinions Are Unreliable.

### A. Mauro's Survey-Based Apportionment is Unreliable.

Mauro's survey-based apportionment has two distinct fatal methodological flaws. *First,* Mauro has no reliable methodology to support his opinion that [redacted] of the value of the accused devices is attributable to the GUI. Transparence argues that the [redacted] valuation is "Samsung evidence." Opp. 4. That is false. [redacted]

[redacted]

[redacted]

Transparence posits that Mauro could simply assume that a GUI "mediates" all software, and that [redacted] is the same thing as GUI value. Opp. 4. That makes no sense. A smartphone's software includes thousands of features that are not "mediated" by the user interface, including operating system processes, background synchronization, cellular baseband management, and encryption. [redacted]. Ex. 8 at 147:22–149:20.[1] Moreover, even if [redacted], it would not necessarily follow that the GUI is responsible for [redacted] of the value of the accused devices. Mauro's [redacted] GUI value is plucked out of thin air.

*Second*, even if the [redacted] GUI valuation was reliable (it is not), Transparence never explains how Mauro assigns [redacted] of that GUI value to the accused combinations, or *how* he converts those "device value" percentages to *revenue percentages*. Opp. 5–8. Transparence says Mauro considered Samsung documents, KLM, friction literature, Kano framing, and professional experience. But listing items considered is not a methodology. The question is *how* those inputs were weighted, scored, or translated into exact percentages. The opposition never answers that question. Mauro's report contains, for example, no formula, scoring rubric, feature-weighting criteria, or statistical model, and no explanation why the '329/'580 accused combination deserves [redacted] while the '079 patent's accused combination deserves [redacted]. He divides non-infringing GUI functions into groups and assigns values but does not explain how functions were assigned or values selected—and those values do not reconcile with his final [redacted] range. Dkt. 157-4

[1] Exhibit 8 is provided with the accompanying Declaration of Michael R. Morey.

[redacted]

¶¶ 163–66. Transparence concedes this; it just says Mauro used judgment. Judgment is not a substitute for methodology. The Court should exclude Mauro's survey-based apportionment.

**B. Mauro's Alternative "Per-Device" Apportionment is Unreliable.**

Mauro's alternative "per-device value" apportionment for the '329 and '580 patents *assumes* a user uses the accused combination "six times per active day." Mot. 1213; Dkt. 131-2 at 58–60. There is no evidence of any usage of the accused combination. Mot. 12–13. Transparence indeed withdrew infringement claims for all method claims of the '329/'580 patents. Dkt. 161-3.

Even if Mauro explained how his KLM analysis resulted in his percentages—he does not—KLM does not fill the gap. KLM estimates time differences for interaction sequences—it does not value patents, measure willingness to pay, or determine what percentage of device revenue is attributable to an invention. A 15% time reduction is not a 15% value contribution, and Mauro identifies no economic model bridging that leap. Indeed, Mauro concedes that none of his cited studies "directly produces a percentage-of-total-smartphone-value figure" for the accused combinations. Dkt. 157-2 at 23. None of the authorities Transparence cites allow reciting materials considered, invoking professional experience, and announcing percentages. The Court should exclude Mauro's alternative ("per-device") apportionment opinion.[2]

**III. <u>Rule 37 Requires Excluding Both of Mauro's Apportionment Alternatives.</u>**

Rule 37 independently requires excluding both of Mauro's alternative apportionments. Samsung's Interrogatory No. 9 requested identifying "the specific inputs" for the damages calculation. Transparence did not disclose any apportionment theory, much less Mauro's KLM or reliance on a comparison to the third-party LastPass password manager app. *See* Dkt. 154 at 1–3,

[2] Transparence also confirms that Mauro improperly lumps his apportionment of the '329 and '580 patents together generally, as it and Mauro fail to explain *how* his apportionment allocates between the two patents. Opp. 11-12 (citing Dkt. 157-5 at 73:25–74:4); Mot. 13.

[redacted]

8–10; Dkt. 131 at 13–15. A generic reference to mapping sales to accused functions did not put Samsung on notice of Transparence's intended apportionment methodology and underlying facts.

The prejudice is manifest. Because Transparence never disclosed Mauro's methodologies or asserted factual allegations during fact discovery, Samsung had no opportunity to test the methodology's inputs or develop fact discovery directed to Mauro's theories. Expert discovery cannot cure that prejudice. Transparence's cited cases are inapposite: in *Mobile Equity*, the disputed items "were timely disclosed during fact discovery," 2022 WL 19917855, at *2 (E.D. Tex. Sept. 23, 2022); in *PerdiemCo*, the parties ***agreed*** to defer substantive interrogatory responses until expert reports, 2016 WL 8135383, at *2 (E.D. Tex. Oct. 25, 2016).

## IV. Mauro's "App Ecosystem" Opinion Has No Evidentiary Foundation.

Separate from apportionment, Mauro opines that the accused combination for the '329 and '580 patents "drive[s] engagement with the [Samsung] application ecosystem and . . . the revenue streams [it] generates." Dkt. 131-2 at 18. Transparence identified no evidence of a causal connection between the accused combination and user app download. Opp. 14–15. Transparence argues that the accused combination "reduc[es] the friction of authenticating applications and receiving and managing their notifications, the invention increases engagement with the application platform and the revenue it generates." *Id.* at 15. That just restates the bottom-line opinion, not methodology based on reliable evidence. Transparence also argues that Vanderhart further "develops the Galaxy Store record," Opp. 15, but Transparence has already ***conceded*** that "[t]he Galaxy Store increment rests on Mr. Mauro's opinion." Dkt. 156 at 12–13. Without any evidence of a causal connection between the accused combinations and non-accused Galaxy Store, the Court should exclude Mauro's "app ecosystem" opinion. *Exafer*, 169 F.4th 1092–93.

## V. Conclusion

The Court should exclude Mauro's apportionment and "app ecosystem" opinions.

[redacted]

Dated: August 17, 2026

*/s/ Brian Bieluch*

Richard L. Rainey (D.C. Bar. No. 452996)
Kevin B. Collins (D.C. Bar No. 445305)
Paul J. Wilson (D.C. Bar. No. 473645)
Cyrus S. Nasseri (D.C. Bar No. 1632387)
Kee Young Lee (D.C. Bar No. 1725281)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 778-5565
RRainey@cov.com | KCollins@cov.com
PWilson@cov.com | CNasseri@cov.com |
KYLee@cov.com

Brian Bieluch (CA Bar. No. 331167)
Ali Mojibi (CA Bar No. 265332)
Michael R. Morey (CA Bar No. 313003)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars,
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
BBieluch@cov.com | AMojibi@cov.com
MMorey@cov.com

Patrick N. Flynn (CA Bar No. 286108)
**COVINGTON & BURLING LLP**
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
PFlynn@cov.com

Melissa R. Smith (Texas Bar No. 24001351)
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

*Attorneys for Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.*

[redacted]

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via electronic mail and with notice of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 17, 2026.

/s/ *Brian Bieluch*
Brian Bieluch

[redacted]