**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| TRANSPARENCE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:24-CV-910-RWS |

**ORDER**

Before the Court are Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.'s ("Samsung") First Motion for Leave to Amend Their Invalidity Contentions (Docket No. 43), Defendants' Motion for Lack of Subject Matter Jurisdiction and Judgment on the Pleadings Pursuant to Rules 12(b)(1) and 12(c) of the Federal Rules of Civil Procedure (Docket No. 92), Defendants' Motion to Strike Amended Infringement Contentions and Motion for a Protective Order Regarding Transparence's Amended Infringement Contentions (Docket No. 93), and Defendants' Motion for Leave to Amend Their Answer and Second Motion for Leave to Amend Their Invalidity Contentions (Docket No. 95). On August 28, 2026, the Court heard oral argument on the above motions. Based on the parties' briefing and argument, the Court rules as follows:

- Defendants' First Motion for Leave to Amend Their Invalidity Contentions (Docket No. 43) is **DENIED**;

- Defendants' Motion for Lack of Subject Matter Jurisdiction and Judgment on the Pleadings Pursuant to Rules 12(b)(1) and 12(c) of the Federal Rules of Civil Procedure (Docket No. 92) is **DENIED**;
- Defendants' Motion to Strike Amended Infringement Contentions and Motion for a Protective Order Regarding Transparence's Amended Infringement Contentions (Docket No. 93) is **GRANTED-IN-PART** and **DENIED-IN-PART**; and
- Defendants' Motion for Leave to Amend Their Answer and Second Motion for Leave to Amend Their Invalidity Contentions (Docket No. 95) is **DENIED**.

## LEGAL STANDARD

### I. P.R. 3-6(b)

Local Patent Rule 3-6 sets forth the procedures for amending infringement and invalidity contentions. The contentions may either be amended (1) without leave of court (under P.R. 3-6(a)) or (2) with leave of court (under P.R. 3-6(b)). When a party seeks to amend its contentions under P.R. 3-6(b), the amendment may be granted upon a showing of good cause. *Mears Techs., Inc. v. Finisar Corp.*, No. 2:13-cv-00376-JRG, 2014 WL 12605571, at *1 (E.D. Tex. Oct. 6, 2014). Courts consider four factors when ruling on motions for leave to do so: "(1) the explanation for the failure to meet the deadline; (2) the importance of the thing that would be excluded if the proposed amendment is not allowed; (3) potential prejudice in allowing the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice." *Id.* (citing *S&W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003)).

### II. Rule 12(b)(1)

A defendant may raise a challenge to a federal court's subject matter jurisdiction at any time, including on a motion to dismiss. *See* Fed. R. Civ. P. 12(b)(1); *id.* 12(h). It is well settled that "the issue of standing is one of subject matter jurisdiction." *Cobb v. Cent. States*, 461 F.3d 632,

635 (5th Cir. 2006). Because "[a] court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit," "if the original plaintiff lacked Article III initial standing, the suit must be dismissed." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (citations omitted).

**III. Rule 12(c)**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The central issue [in a Rule 12(c) motion] is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). Therefore, Rule 12(c) motions are "subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009).

Under Rule 12(b)(6), the Court must dismiss a complaint that does not state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a plausible claim, a plaintiff must plead facts sufficient to allow the Court to draw a reasonable inference that defendants are liable for the alleged patent infringement. *See id.* At this stage, the Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).

**DISCUSSION**

**I. Defendants' First Motion for Leave to Amend Their Invalidity Contentions (Docket No. 43)**

Defendants seek to assert multiple new references in their amended invalidity contentions.[1] Defendants assert they have been diligent in searching for prior art and in moving to amend their invalidity contentions. Docket No. 46 at 4. According to Defendants, any delays in their efforts are because Plaintiff asserted 23 claims across three patents with "numerous separate infringement theories." *Id.* at 2. Their proposed amendments, Defendants claim, are sufficient to invalidate one or more of the asserted claims, either independently or in combination with other prior art.[2] Docket No. 43 at 4–5. Further, Defendants contend that Plaintiff will suffer no unfair prejudice because they served the proposed amendments in September, one month after locating the Hassan reference. *Id.* at 10. Additionally, according to Defendants, Plaintiff has been on notice of the Rector reference since it was disclosed in their P.R. 3-3 and 3-4 submissions, and the Hassan and Windows 95 references since at least August 29, 2025, when they filed the *ex-parte* reexamination containing these same references. *Id.* at 11–12. Finally, Defendants contend that because the Court has not conducted a *Markman* hearing and fact and expert discovery are not yet closed, no continuance is necessary.[3] *Id.* at 3.

Plaintiff responds that Defendants have not and cannot satisfy the good cause standard. Docket No. 45 at 4. First, Plaintiff contends that Defendants have not been diligent. *Id.* at 5–6. Specifically, Plaintiff argues Defendants have never explained why they did not find the Hassan

---

[1] These references Defendants seeks to assert against Plaintiff are U.S. Patent No. 8,078,990 ("Hassan"), U.S. Patent No. 6,590,596 ("Rector"), and multiple Windows 95 references. *See generally*, Docket No. 43.

[2] Defendants filed an *ex parte* reexamination ("EPR") for the '079 Patent. Docket No. 43 at 4. The Patent and Trademark Office ("PTO") granted the EPR finding that two of the cited references, Hassan and Rector, present a significant new question of patentability. *Id.* at 4–5.

[3] Following the filing of this motion, the Court conducted a *Markman* hearing. Docket No. 65. Additionally, the deadlines to complete fact and expert discovery have passed. *See* Docket No. 114.

reference and include it in their original invalidity contentions. *Id.* at 5. Plaintiff also contends that Defendants cannot explain why they failed to appreciate the Rector and Windows 95 references. *See id.* Additionally, Plaintiff asserts, Defendants cannot explain the "four-month delay between discovering the prior art and moving to amend [their] contentions."[4] *Id.* at 7. Further, Plaintiff contends, allowing amendment at this point would cause unfairly prejudice. *Id.* at 8. Plaintiff explains that after the motion was filed claim construction was well underway, it reasonably thought Defendants had abandoned the motion, and it "proceed[ed] under this assumption as ***multiple*** claim construction deadlines passed." *Id.*; Docket No. 47 at 4.

The Court concludes Defendants have failed to show good cause. As Plaintiff shows, Defendants have not explained why, with reasonable diligence, they could not have discovered the Hassan reference prior to the deadline for filing invalidity contentions. *Id.* at 4. Defendants never explain why they failed to find the reference apart from arguing that the complexity of this case, based solely on the number of asserted claims and infringement theories, should serve as a basis for permitting a late amendment. *See* Docket No. 46 at 2; *see Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, No. 4:14-CV-371, 2016 WL 3854700, at *2 (E.D. Tex. Mar. 28, 2016) (denying motion to amend invalidity contentions because the defendants did "not explain[] why, with reasonable diligence, they could not have discovered the proposed references prior to the deadline for filing invalidity contentions"). Nor is Defendants' explanation for why they waited more than four months to file this motion persuasive. *See* Docket No. 43 at 3–8.

---

[4] Defendants contend that Plaintiff waited one month to oppose the amendment and that this, along with the meet and confer discussions, caused the delay in filing. Docket No. 46 at 3. Defendants represented they would file this motion the week of November 3, 2025, but instead filed the motion on December 31, 2025. *See* Docket Nos. 43, 45 at 8.

Defendants' disclosure of the Rector reference is not sufficient to support amendment. In *Alcatel*, the court reasoned that while the defendant disclosed the reference prior to the deadline to serve its invalidity contentions, disclosing the reference alone does not satisfy the local rule. *Alcatel USA Res., Inc. v. Microsoft Corp.*, No. 6:06-CV-500, 2008 WL 11348444, at *2 (E.D. Tex. Oct. 3, 2008) ("Simply disclosing the prior art does not even come close to satisfying the requirements of Patent Rule 3-3."). "The delay addressed by this factor is the delay from the date the invalidity contentions were due to the date [Defendant] sought to supplement them, not the time between discovering the prior art and disclosing it." *Id.* Thus, Defendants have not shown good cause to amend their invalidity contentions.

In addition to Defendants' lack of diligence in amending its contentions, allowing the amendments at this point in the litigation risks unfair prejudice to Plaintiff. This case has progressed for nearly two years and trial is now one month away. Fact discovery and expert discovery have already closed. To require Plaintiff to begin defending against new prior art this late in the litigation would be unfairly prejudicial. Further, a continuance of trial in this case would be unfair.

Although Defendants' proposed amendments may be important to their case, that alone does not overcome their lack of diligence and potential prejudice to Plaintiff. Defendants have failed to show good cause to amend their invalidity contentions.

For these reasons, Defendants' First Motion for Leave to Amend Their Invalidity Contentions (Docket No. 43) is **DENIED**.

## II. Defendants' Motion for Lack of Subject Matter Jurisdiction and Judgment on the Pleadings Pursuant to Rules 12(b)(1) and 12(c) of the Federal Rules of Civil Procedure (Docket No. 92)

### A. Lack of Subject Matter Jurisdiction

Defendants argue that Plaintiff lacks Article III standing because it does not hold title to the patents-in-suit. Docket No. 92 at 2–3. Specifically, Defendants contend Transparence, LLC, incorporated in California and the named party in the complaint, *see* Docket No. 1 at ¶ 2, assigned its rights to the patents to Transparence, LLC, incorporated in Texas prior to filing this lawsuit. Docket No. 92 at 2–3. Plaintiff contends the identification of Transparence, LLC, as a company incorporated in California is "an obvious scrivener's error." Docket No. 107 at 3–4. Plaintiff argues the plaintiff in this case is and has always been Transparence, LLC, which is incorporated in Texas. *Id.* at 4.

"[I]n order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent *at the inception of the lawsuit*." *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003). Transparence, LLC, incorporated in California, acquired the rights of the patents-in-suit on June 27, 2024. Docket No. 92 at 3; Docket No. 92-8. On July 1, 2024, before the complaint was filed, "Transparence LLC, a Limited Liability Company of California" assigned the rights to the patents-in-suit to "Transparence, LLC, a Limited Liability Company of Texas." Docket No. 92-8. At the hearing, Plaintiff explained that, throughout the litigation, Defendants "never once raised the possibility that the Plaintiff was improperly named." Docket No. 189 (Hr'g Tr.) at 12:5–7. Additionally, Plaintiff argues that "[Defendants] well-understood who the Plaintiff was." *Id.* at 12:7–8. At the inventor's deposition, he confirmed that the complaint listed the plaintiff as a California company, but that was an error. Docket No. 107-3 at 250:10–13. He testified "[Plaintiff is] incorporated in Texas."[5] *Id.* at 250:16–19.

[5] The Court notes that Plaintiff, upon discovering the error, never filed a motion requesting amendment or corrected its name from the California LLC to the Texas LLC; however, this is not fatal to the lawsuit. A "dismissal of a case resulting from a lack of subject matter jurisdiction is 'not a determination of the merits.' " *Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020), *as revised* (Dec. 30, 2020). Thus, any "such [] dismissal should be made without prejudice." *Id.*

Plaintiff points out Transparence LLC, a Limited Liability Company of Texas, held title to the patents-in-suit when it filed the complaint. Docket No. 119 at 1. Defendants do not dispute this. *See* Docket No. 92 at 3. Because it is undisputed that the Texas LLC held rights to the patents-in-suit on November 11, 2024 when Plaintiff filed the complaint (*see* Docket No. 1; Docket No. 92-8), there is no jurisdictional defect. Defendants' motion to dismiss on this ground is **DENIED**.

**B. Subject Matter Eligibility**

Defendants contend that the Asserted Claims are directed to "authenticating access to applications and displaying menus and notifications" and "displaying menus in response to user input," which is ineligible subject matter. Docket No. 92 at 8. Patent eligibility under 35 U.S.C. § 101 is a question of law, but the "legal conclusion may contain underlying factual issues." *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340–41 (Fed. Cir. 2013). The Supreme Court has established a two-part test for patent eligibility. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014).

At step one under *Alice*, the Court must "first determine whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 218. For software or computer systems, "the first step in the *Alice* inquiry . . . asks whether the focus of the claims is on [a] specific asserted improvement in computer capabilities . . . or, instead, on . . . an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016). In conducting the step one inquiry, the Court "must focus on the language of the Asserted Claims themselves, considered in the light of the specification." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (internal citations omitted).

If the Court determines that the claims are directed to an abstract idea, it must then determine whether the claims contain an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application. *Alice*, 573 U.S. at 217. An inventive concept is

"some element or combination of elements sufficient to ensure that the claim in practice amounts to 'significantly more' than a patent on an ineligible concept." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014). The Court "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (citations omitted). Even if "each claim element, by itself, was known in the art," "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed Cir. 2016).

"All claims in a patent, both independent and dependent, are presumptively valid regardless of 'the validity of other claims.' But when multiple claims 'are substantially similar and linked to the same abstract idea,' courts can resolve challenges to all claims by analyzing a single, representative claim. The burden of demonstrating that a single claim is representative falls on the movant." *PerformancePartners, L.L.C. v. FlashParking, Inc.*, 697 F. Supp. 3d 678, 683 (W.D. Tex. 2023) (internal citations omitted).

Defendants argue that the Asserted Claims of the '580 and '329 Patents are invalid for being "directed to the abstract idea of authenticating access to resources and displaying a menu with notifications." Docket No. 92 at 8, 15. Defendants also argue that the '079 Patent is invalid for being directed to the abstract idea of "displaying a menu[,] . . . displaying notifications, and authenticating access to resources." *Id.* at 21. Defendants assert that independent Claim 1 is representative. *Id.* at 8, 15, 21. Plaintiff contests this allegation. *See* Docket No. 107 at 10 n.1, Docket No. 119 at 9. Having considered the parties' arguments, the Court concludes that the

independent claims Defendants reference are representative of the asserted claims for the purposes of resolving this motion.

Claim 1 of the '580 Patent recites:

> 1. A wireless device comprising:
>
> one or more processors;
>
> a touch screen input device coupled to the one or more processors; and
>
> a computer-readable medium comprising instructions stored therein, which when executed by the processors, cause the processors to perform operations comprising:
>
> > receiving, via the touch screen input device, a first authentication requirement, wherein the first authentication requirement is associated with a first application and provides a login credential for a service associated with the first application;
> >
> > receiving, via the touch screen input device, a second authentication requirement, wherein the second authentication requirement is associated with a second application and provides a login credential for a service associated with the second application and wherein the first authentication requirement is different from the second authentication requirement;
> >
> > associating, by the processors, the first authentication requirement and the second authentication requirement with a touch-based single manager login credential, and wherein the single manager login credential is configured to facilitate user access to the first application and the second applications;
> >
> > displaying an application menu including a first application item that is associated with the first application, and a second application item that is associated with the second application; and
> >
> > displaying, in the application menu and adjacent to the first application item, a new message indicator, and wherein the new message indicator indicates a number of new messages associated with the first application item.

Docket No. 1-3 ('580 Pat. at Claim 1).

Claim 1 of the '329 Patent recites:

> 1. A computer-implemented method of managing notifications comprising: receiving an authentication requirement for a plurality of applications that provide messages; associating the authentication requirements for the plurality of applications that provide messages with a single login credential; after receiving the single login credential,

> displaying a menu listing each of the plurality of applications that provide messages; receiving, in the menu, an input from a user specifying one or more applications from the plurality of applications that the user wants to receive notifications when a message is received from the one or more applications; receiving a message from an application specified in the menu; and displaying, regardless of a computer environment context, a notification indicating that a message was received in the one or more specified applications.

Docket No. 1-1 ('329 Pat. at Claim 1).

Claim 1 of the '079 Patent recites:

> 1. A computer-implemented method for managing one or more applications comprising:
>
> receiving input from a user;
>
> generating a graphical user interface adjacent to a cursor in response to the input received;
>
> wherein the graphical user interface comprises one or more persistent application management items that remain constant within the graphical user interface regardless of the user's computer environment;
>
> wherein the application management items are configured for launching one or more application associated with the application management item; and
>
> wherein the method steps are done by at least one processor.

Docket No. 1-2 ('079 Pat. at Claim 1).

**1. '580 and '329 Patents**

Defendants contend that the patents embody an abstract idea. First, Defendants argue that the '580 and '329 Patents merely collect, organize, and display data. Docket No. 92 at 8–9, 15–16. Specifically, Defendants argue that the '580 claims never explain how the invention "associates" multiple application passwords with a single "manager" password in an inventive manner, nor how the '329 claims achieve the result of displaying a menu and notifications or any specific structure for how the menu and notifications are displayed. Docket No. 110 at 2–7. Defendants further argue that the Asserted Claims are not directed to any improvement of

computer functionality because the claims recite conventional computer activity and the sort of process that can be performed in the human mind. Docket No. 92 at 12, 17.

Plaintiff counters this by asserting that the claims focus on specific improvements in computer security and an improved user interface. Docket No. 107 at 12, 21. Specifically, Plaintiff argues that the innovations disclosed in the ’580 and ’329 Patents were largely nonexistent at the time of invention. *Id.* at 12, 24. Plaintiff also argues that Defendants are reading the claims at such a high level of abstraction that it violates the Federal Circuit’s decision in *Enfish, LLC v. Microsoft Corporation*, which cautions that “describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.” *Id.* at 11 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) (citation omitted)).

Defendants analogized the subject matter of the Asserted Claims in the ’580 Patent to writing a list of passwords on a piece of paper and locking the passwords in a file cabinet or drawer. Docket No. 189 (Hr’g Tr.) at 35:4–8. In response, Plaintiff argues that Defendants’ analogy ignores the elimination of disparate authentication set forth in the claims. *Id.* at 44:14–20.

The specification indicates that the patent was trying to solve the technological problem “caused by prior art methods that required users to navigate through multiple screens” and manage multiple menus and event notifications. *See* Docket No. 107 at 11–12, 20–22; ’580 Pat. at 2:33–3:45.

Defendants’ primary argument that the claims nor the specification show how the limitations operate is not properly resolved on a motion for judgment on the pleadings. *See generally*, Docket No. 92. Throughout their motion and reply Defendants argue that the invention does not show ***how*** “associating” is done. *See* Docket No. 110 at 2–6. During claim construction,

the magistrate judge held "[a]s for whether the patent provides reasonable clarity regarding 'associating,' this is a generic, commonly used word." Docket No. 68 at 37. Thus, "associating" was given its plain meaning. *Id.* at 40. Therefore, the arguments presented by the Defendants pertain to possible concerns regarding written description or enablement, making them more suitable for a motion for summary judgment.

Additionally, the Court agrees that the asserted claims do more than invoke computers as a mere tool. The claims are not focused on collecting, organizing, and displaying data. They disclose a single manager login credential that facilitates access to multiple applications and specific menu and notification configurations for those applications, *see* Docket No. 107 at 11, and an improved GUI. *Id.* at 20–22.

The Court also finds Defendants' file-cabinet analogy unpersuasive. Writing down a list of passwords and locking them in a cabinet or drawer is not the same as the claimed single login credential. The '580 Patent discloses a "Login All" functionality where a user will be logged into all relevant applications. '580 Pat. at 7:33–40. Thus, the single login credential stands in for disparate authentication requirements. This eliminates the application-by-application manual entry that Defendants' analogy would still require.

Accordingly, the Court finds that the '580 and '329 Patents are not directed to an abstract idea. Because the Court finds that the asserted claims are not directed to an abstract idea, it is not necessary to reach *Alice* step two.

**2. '079 Patent**

Defendants argue that Claim 1 of the '079 Patent is directed to "displaying notifications" and "authenticating access" using technology that was already available, common, and conventional. Docket No. 92 at 21–23. Defendants also argue that Claim 1 is analogous to the patent-ineligible claims in *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1240–41 (Fed. Cir. 2016),

that recited "generating menus on a computer" and did "not claim a particular way of programming or designing the software to create menus that have these features, but instead merely claim the resulting system." Docket No. 110 at 8–9.

Plaintiff contends that the "claims are directed to an improved user interface." Docket No. 107 at 27. Plaintiff argues the claims "recite a particular centralized, persistent structure to help users navigate and manage their applications." *Id.* Plaintiff then argues that the claims are not merely directed to displaying a "menu" but instead recite a multi-layered graphical user interface. *Id.* Next, Plaintiff argues that this multi-layered graphical user interface is directed to solving the problem of managing multiple applications without centralization and convenience. *Id.* at 27–28. Specifically, Plaintiff alleges that the patent improves computer functionality because it eliminates the context-specific notification and provides application notifications regardless of a user's computer environment. *Id.* at 26.

In *Ameranth*, the claims were directed to "generating a second menu from a first menu and sending the second menu to another location." 842 F.3d at 1240. The Federal Circuit held that the patent was directed to an abstract idea because it claimed the resulting system or functionality and "d[id] not claim a particular way of creating menus with the claimed features." *Id.* at 1241. Unlike the claims in *Ameranth*, the '079 claims do not claim generating a menu as a result. Docket No. 107 at 28. The claims instead are directed to a particular interface architecture—generating a graphical user interface adjacent to a cursor with a "persistent-regardless-of-environment" limitation. *See* Docket No. 1-2 ('079 Pat.) at Claim 1.

Additionally, *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018), is instructive. The Federal Circuit explained in that case that, while generic indices existed prior to the invention, the asserted claims were directed to an improved user interface and not an

index. *Id.* at 1362. The court held that the claims were "directed to a particular manner of summarizing and presenting information in electronic devices," not an abstract idea. *Id.*

Like the claims in *Core Wireless*, the asserted claims in the '079 Patent are directed toward patent-eligible subject matter. In particular, the asserted claims are not directed towards an abstract idea, at the very least because they are directed toward a particular interface architecture that recites a specific configuration. Docket No. 107 at 28–29. These limitations disclose a specific manner of displaying a persistent graphical user interface adjacent to a cursor and is configured for managing multiple applications. *See id.* at 28.

Accordingly, the Court finds that the '079 Patent is not directed to an abstract idea. Because the Court finds that the asserted claims are not directed to an abstract idea, it is not necessary to reach step two.

## III. Defendants' Motion to Strike Amended Infringement Contentions and Motion for a Protective Order Regarding Transparence's Amended Infringement Contentions (Docket No. 93)

Plaintiff amended its contentions without leave of court. Docket No. 106 at 1. That is permissible if a "party claiming patent infringement believes in good faith that the Court's Claim Construction Ruling so requires." P.R. 3-6(a)(1). Plaintiff states it had a "good faith" basis for amending its contentions after the Court issued its claim construction ruling. Docket No. 106 at 1.

The Court disagrees. Plaintiff argues the Court's construction of the term "regardless of a computer environment context" was unexpected. Docket No. 106 at 1, 5. Plaintiff contends the construction was unexpected because neither party "proposed the construction the Magistrate Judge ultimately entered." *Id.* at 5. Additionally, Plaintiff contends that Defendants are unable to claim this claim construction outcome was foreseeable. *Id.*

A "good faith" belief under P.R. 3-6(a)(1) requires an unexpected or unforeseeable claim construction. *Sycamore IP Holdings LLC v. AT&T Corp*, No. 2:16-cv-588-WCB, 2018 WL

1695231, at *4 (E.D. Tex. Apr. 6, 2018) (collecting cases). Here, the Court believes the claim construction was foreseeable.

"A party cannot argue that because its precise proposal for a construction of a claim term is not adopted by the court, it is surprised and must prepare new infringement contentions." *Id.* at *5. Plaintiff does not explain why the Court's construction of "regardless of a computer environment context" was unexpected, apart from stating the Court did not adopt either of the parties' proposed constructions and that the term "cursor" does not appear in the claim term. *See* Docket No. 68 at 41; Docket No. 189 at 109:5–6. Additionally, the Court does not find the adopted construction "sufficiently different" as to warrant amended infringement contentions. *See Nike, Inc. v. Adidas Am. Inc.*, 479 F. Supp. 2d 664, 669 (E.D. Tex. 2007) ("While the court did not specifically adopt either of the parties' proposals, the court did not wholly depart from them either. . . . [T]he court defined [the] term based upon the intrinsic evidence and the plain and ordinary usage of the term.").

The parties' proposed constructions and the Court's construction are as follows:

**Plaintiff:** "plain and ordinary meaning."

**Defendants:** "regardless of hardware settings, application settings and operating system settings including which applications are running."

**Court:** "regardless of which applications are currently running and regardless of the location of a cursor."

Docket No. 68 at 41.

The Court adopted a construction that was not "sufficiently different" from the parties' proposal. Additionally, the Court defined the disputed term based upon the intrinsic evidence, which discloses that right-click menus are traditionally contextual in nature and that the menu

changes depending on the cursor's location. '079 Patent, 1:24–28. Thus, the Court's claim construction order found that "context" in the patent's specification "refers to a cursor location within a graphical user interface and to the applications that are currently running." Docket No. 68 at 43. Consequently, this interpretation does not justify Plaintiff's amended infringement contentions argument.

Alternatively, Plaintiff argues it has good cause under P.R. 3-6(b) because (1) the claim construction ruling was different from the parties' proposed constructions; (2) the amendments are essential to proving infringement of the addressed claim elements in the independent claims; (3) there is no prejudice because Plaintiff "already asserted other cursor-based accused functionalities"; and (4) the amendments are limited and no continuance is necessary. Docket No. 106 at 8; Docket No. 118 at 5.

In assessing this motion, the Court considers the following factors: "(1) the explanation for the failure to meet the deadline; (2) the importance of the thing that would be excluded if the proposed amendment is not allowed; (3) potential prejudice in allowing the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice." *Mears Techs., Inc.*, 2014 WL 12605571, at *1.

The first factor weighs against amendment. First, as was discussed above, the Court's construction of "regardless of a computer environment context" was not unexpected. Second, Plaintiff initially asserted both cursor and non-cursor infringement theories in its P.R. 3-1 contentions, *see* Docket No. 59-9, and has already asserted visible cursor-based theories based on DeX. Docket No. 106 at 8. The third factor likewise weighs against Plaintiff. At this stage in the case, permitting amendments to infringement contentions that assert theories Plaintiff could have presented in its P.R. 3-1 contentions would result in unfair prejudice. The prejudice is "loss of an

opportunity to use discovery to explore the opposing party's theories and the loss of time to develop responses to those theories." *Uniloc USA, Inc. v. ADP, LLC*, No. 2:16-cv-00393-RWS, 2020 WL 13931423, at *5 (E.D. Tex. Feb. 5, 2020) (quotation omitted). Lastly, the requested changes are significant enough that the parties would essentially have to begin discovery anew on the '329 Patent, claims, and accused products. As a result, a continuance would not cure the prejudice sufficient to justify the changes Plaintiff proposes.

In their motion, Defendants request that the Court grant a protective order preventing Plaintiff from seeking late discovery on their amended infringement contentions. Docket No. 93 at 15. At the hearing, Defendants stated Plaintiff no longer seeks discovery related to its amended infringement contentions. Thus, the portion of their motion seeking a protective order is moot. For these reasons, Defendants' Motion to Strike Amended Infringement Contentions is **GRANTED** and Motion for a Protective Order Regarding Transparence's Amended Infringement Contentions is **DENIED-AS-MOOT**.

## IV. Defendants' Motion for Leave to Amend Their Answer and Second Motion to Amend Their Invalidity Contentions (Docket No. 95)

Defendants argue that Plaintiff withheld inventor notes that potentially render the asserted patents invalid under inequitable conduct. Docket No. 95 at 4–5. Thus, they argue there is good cause to grant leave to amend. *Id.* at 10–13. First, Defendants state they did not know about these documents until after the deadline to amend pleadings. *Id.* at 10. Second, this new evidence makes the Growl prior art reference even more important.[6] *Id.* According to Defendants, the amendments could potentially be case dispositive. *Id.* at 11. Third, Defendants argue there is no prejudice to

[6] Growl is a notification system that was initially released in 2004. Docket No. 95 at 5. The software allows applications to send notifications to users without interrupting their workflow. *See id.* at 5–6.

Plaintiff because these documents have been within Plaintiff's possession since the inception of the lawsuit. *Id.* at 13. Fourth, Defendants contend no continuance is needed. *Id.*

"In deciding whether to grant leave to file an amended pleading, the district court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

Defendants have not established good cause to amend their invalidity contentions. The Court finds that Defendants fail to show they were diligent in amending their contentions as to the Growl reference. As Plaintiff points out, Defendants' own invalidity chart already asserts Growl against one of the patents-in-suit. Docket No. 105 at 15. Second, Growl has been publicly available since 2004. *Id.* Finally, Plaintiff produced an inventor notebook which disclosed Growl and further produced letters from the inventor (the Growl document) that disclosed "CMIM is a centralized notification system and method like GROWL."[7] *Id.* at 3–4. Additionally, Defendants delayed in filing this motion. Their motion was filed three months after Plaintiff produced the inventor's letters, four months after the deadline to amend pleadings, and nearly a year after the deadline to serve invalidity contentions.[8] *See* Docket No. 95.

---

[7] CMIM stands for "cursor moveable interactive message" and refers to the Inventor's 1999 invention. Docket No. 105 at 3.

[8] In *L.C. Eldridge Sales Co. v. Azen Manufacturing PTE*, the court denied the defendants' motion for leave to amend their invalidity contentions. 2013 WL 7937026, at *4. (E.D. Tex. 2013). The court determined that the delay in seeking the motion would result in prejudice to the plaintiffs and that the defendants provided no justification for their failure to include the prior art in their original contentions. *Id.* Specifically, the court noted the defendants had the "prior art . . . in their possession when they served their invalidity contentions." *Id.* at *3.

The importance factor supports amendment. The Growl reference is important because, as Defendants contend, it may in combination with another reference be case-dispositive. Therefore, if the Defendants' theory were accepted, the patents-in-suit may be invalid.

Defendants contend that Plaintiff will not be prejudiced as Plaintiff was already aware that Defendants were asserting Growl as a prior art reference in relation to the '329 Patent. Docket No. 95 at 13. Plaintiff, however, asserts it will be prejudiced if Defendants are permitted to amend their invalidity contentions because it would jeopardize the trial date as fact discovery is closed, expert reports are underway, and the pretrial deadlines are quickly approaching. Docket No. 105 at 7.

Plaintiff's reliance on *Estech* to support its argument regarding prejudice is persuasive. In *Estech*, the court held that the prejudice factor weighed against granting the motion to amend invalidity contentions despite there being little need for additional fact or expert discovery. *Estech Sys., Inc. v. Target Corp.*, No. 2:20-CV-122-JRG-RSP, 2021 WL 2187978, at *1, 3–4 (E.D. Tex. May 28, 2021). The court reached this conclusion in light of the late stage of the case. *Id.* at *4. At the hearing, Plaintiff argued it would be prejudiced by the "vast and highly intrusive non-party discovery" required by Defendants' proposed amendments. Docket No. 189 (Hr'g Tr.) at 77:2–5. Defendants admitted they sought additional discovery but argued any discovery "could be targeted and efficient." *Id.* at 71:17–22. Because Defendants have acknowledged they seek additional discovery, the proposed amendments would require re-opening fact discovery and potentially expert discovery. Given the advanced stage of this litigation, the potential for prejudice is significant. The Court finds that Defendants' delay in seeking to amend its answer and invalidity contentions would also prejudice Plaintiff. Defendants had access to the inventor's notebook that disclosed Growl. Additionally, Defendants knew of Growl as early as their invalidity contentions because they asserted Growl as prior art against the '329 Patent. Nevertheless, Defendants waited

until three months after Plaintiff produced the Growl document and a year after serving their invalidity contentions before seeking leave.

As discussed above, the balance of the factors weighs against amendment. Accordingly, Defendants' motion for leave to amend their answer and invalidity contentions (Docket No. 95) is **DENIED**.

## CONCLUSION

For the foregoing reasons,

- Defendants' First Motion for Leave to Amend Their Invalidity Contentions (Docket No. 43) is **DENIED**;
- Defendants' Motion for Lack of Subject Matter Jurisdiction and Judgment on the Pleadings Pursuant to Rules 12(b)(1) and 12(c) of the Federal Rules of Civil Procedure (Docket No. 92) is **DENIED**;
- Defendants' Motion to Strike Amended Infringement Contentions and Motion for a Protective Order Regarding Transparences Amended Infringement Contentions (Docket No. 93) is **GRANTED-IN-PART** and **DENIED-IN-PART**; and
- Defendants' Motion for Leave to Amend Their Answer and Second Motion to Amend Their Invalidity Contentions (Docket No. 95) is **DENIED**.

**So ORDERED and SIGNED this 29th day of September, 2026.**

Robert W Schroeder III

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE